# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1213

_____

Thomas & Wong General Contractor,　*
a Brunei Darussalam corporation,　　*
　　　　　　　　　　　　　　　　*
　　　　　Appellant,　　　　　　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　*　District of Minnesota.
The Lake Bank, N.A., doing business　*
as The Lake Bank,　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　Appellee.　　　　　　　*

_____

Submitted: November 12, 2008
Filed: January 23, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Thomas & Wong General Contractor sued The Lake Bank for failure to perform under a Collateral Transfer Agreement. Thomas & Wong appeals a summary judgment in favor of Lake Bank. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

The facts are stated in the light most favorable to Thomas & Wong, the non-moving party. *See Jenkins v. Winter*, 540 F.3d 742, 744 (8th Cir. 2008).

Lake Bank made loans to Beardmore Investments, Inc., secured by collateral owned by John Beardmore, its president, director, and sole shareholder. John Beardmore is also the president, director, and sole shareholder of BDV Investments, Inc. In 2003, he informed Lake Bank that he was negotiating a financing package with Thomas & Wong, and that some of the loan proceeds would pay Beardmore Investments' debt to Lake Bank. Beardmore orally instructed Lake Bank's president to assign the collateral to Thomas & Wong upon receipt of a $500,000 wire transfer. BDV made a promissory note to Thomas & Wong; Thomas & Wong loaned BDV $1,500,000.

On March 12, 2003, Lake Bank's president spoke with two of Thomas & Wong's agents, Edward Tarapaski and Jan Wallace, about wiring money to Beardmore Investments' account at Lake Bank. When asked if Thomas & Wong "would send the money right away," Wallace responded that Thomas & Wong would "need something in writing from Lake Bank to verify the collateral again and to verify that ownership would transfer to Thomas & Wong upon receipt of the funds." Wallace received a letter faxed from Lake Bank, entitled "Collateral Transfer to Thomas and Wong General Contractor." The Collateral Transfer Agreement states:

> Please be advised upon the receipt of wired funds The Lake Bank will assign the following collateral to Thomas and Wong General Contractor.
>
> A second mortgage on Mr. Beadmore's [sic] Arizona home, the home is appraised at $2,000,000 with a first mortgage of $999,997. Equity $1,000,000.
>
> A 1999 Mercedes and a 2000 18 ft. Mystic Ski Boat with a Shorestation and lift total value of $50,000.
>
> A 22% interest in Founders Mezzanine Stock Fund estimated value $150,000. dividends in 2002 of $7,000. Superior Financial Holdings, Inc. stock value $200,000.
>
> We understand the $500,000 wire will be transferred today.

The letter is signed on behalf of "The Lake Bank NA." Later that day, Thomas & Wong wired $500,000 to Beardmore Investments' account at Lake Bank. Lake Bank did not transfer the collateral upon receipt of the funds.

BDV defaulted on its promissory note. Thomas & Wong requested that Lake Bank verify retention of the collateral and confirm an intent to make it available for liquidation. Lake Bank informed Thomas & Wong that it would maintain the collateral, but not deliver it until BDV and Thomas & Wong agreed in writing to its disposition. Correspondence between Lake Bank and Thomas & Wong continued into the spring of 2004. In June 2004, Lake Bank sent Thomas & Wong documents related to the collateral.

Thomas & Wong sued in district court for Lake Bank's failure to deliver the collateral in a timely manner. The district court granted Lake Bank's motion for summary judgment, holding the suit was barred by the Minnesota credit-agreement statute of frauds.

## II.

This court reviews a district court's grant of summary judgment de novo, viewing the evidence most favorably to the non-moving party. ***Zhuang v. Datacard Corp.***, 414 F.3d 849, 854 (8th Cir. 2005).

Minnesota law provides: "A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." **Minn. Stat. § 513.33, subd. 2**. Thomas & Wong seeks to maintain an action on the Collateral Transfer Agreement. At issue is whether the Collateral Transfer Agreement is a credit agreement, and whether Thomas & Wong is a debtor.

A.

A "credit agreement" is "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." **§ 513.33, subd. 1(1).** The district court ruled that the Collateral Transfer Agreement is a credit agreement because it is an agreement "to make any other financial accommodation."

Minnesota cases broadly interpret "financial accommodation." In *Rural American Bank v. Herickhoff*, 485 N.W.2d 702 (Minn. 1992), a father agreed to involvement in a loan to his son, on the condition that the father's loan repayment receive priority. The Minnesota Supreme Court found that the priority repayment plan was "a financial accommodation with respect to a lending agreement" and "precisely the kind of 'financial accommodation' intended to be covered by the statute." *Id.* at 706. In *Pako Corp. v. Citytrust*, 109 B.R. 368 (D. Minn. 1989), an oral agreement was allegedly attached to an underlying credit agreement. The court found that it was thus, "in effect, an oral aspect of the underlying credit agreement" and "a financial accommodation within the meaning of the statute." *Id.* at 377. In both *Herickhoff* and *Pako*, an agreement modifying an underlying credit transaction was found to be a financial accommodation and therefore, itself a credit agreement.

In this case, the Collateral Transfer Agreement modified Lake Bank's loan to Beardmore Investments. Lake Bank agreed to transfer the collateral in exchange for payment of Beardmore Investments' debt. Lake Bank thus elected to make a financial accommodation regarding Beardmore Investments' loan. The Collateral Transfer Agreement is an agreement to make a financial accommodation and therefore, a credit agreement.

B.

Although the Collateral Transfer Agreement is a credit agreement, it triggers the Minnesota statute only if the suit is by a debtor. At issue is whether Thomas & Wong is a debtor. "Debtor" means "a person who obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor." **§ 513.33, subd. 1(3)**.

-4-

The district court found that Thomas & Wong is a debtor because it sought a credit agreement with Lake Bank.

Each part of a statute should be construed in connection with every other part and in the context of the statute as a whole. *State v. Clark*, 755 N.W.2d 241, 250 (Minn. 2008). Statutory provisions cannot be interpreted in isolation. *See Clark v. Pawlenty*, 755 N.W.2d 293, 305 (Minn. 2008). Thomas & Wong is suing on the Collateral Transfer Agreement, so the "credit agreement" is the Collateral Transfer Agreement throughout the statute as applied here.

Whether Thomas & Wong is a debtor under the statute depends on whether Lake Bank is a creditor with regard to the Collateral Transfer Agreement. Under § 513.33, "creditor" means "a person who extends credit under a credit agreement with a debtor." **§ 513.33, subd. 1(2)**. A statute should be interpreted to give effect to all of its provisions and no word, phrase, or sentence should be deemed superfluous, void, or insignificant. *State v. Larivee*, 656 N.W.2d 226, 229 (Minn. 2003). That a creditor is one who "extends credit under a credit agreement" cannot be ignored.[1] Lake Bank is not extending credit under the Collateral Transfer Agreement, so Lake Bank is not a creditor. Since Thomas & Wong is not seeking a credit agreement with a creditor, Thomas & Wong is not a debtor with respect to the Collateral Transfer Agreement. Therefore, suit is not barred by Minnesota's credit-agreement statute of frauds.

---

[1] The parties cite interpretations of Colorado's credit-agreement statute of frauds. *See Schoen v. Morris*, 15 P.3d 1094, 1098 (Colo. 2000); *Echo Acceptance Corp. v. Household Retail Serv.*, 267 F.3d 1068, 1077-78 (10th Cir. 2001). Under the Colorado statute, a "creditor" is "a financial institution which *offers to extend*, *is asked to extend*, or extends credit under a credit agreement with a debtor." **Colo. Rev. Stat. § 38-10-124(1)(b)** (emphasis added). Due to this different language, interpretations of the Colorado statute are not illuminating on this point.

## III.

The judgment of the district court is reversed and the case is remanded.

_____