# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-60953

In the Matter of: TROY EDWIN TATE; ELAINE BURRIS TATE

Debtors

---

TROY EDWIN TATE and ELAINE BURRIS TATE

Appellants

v.

R. MICHAEL BOLEN, United States Trustee

Appellee

---

Appeal from the United States District Court
for the Southern District of Mississippi, Southern Division
USDC No. 1:08 CV 32

---

Before REAVLEY, DAVIS, and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The debtors, Troy Edwin Tate and Elaine Burris Tate, appeal the order of the district court affirming the judgment of the bankruptcy court dismissing their Chapter 7 bankruptcy case for abuse. To determine if a debtor with above median income has filed a presumptively abusive Chapter 7 case, we must apply

the means test under that chapter and decide whether a debtor can claim a transportation ownership deduction when the debtor has no loan or lease payment on his cars. Based on our conclusion that the debtors should have been allowed to deduct the transportation ownership deduction under the plain language of 11 U.S.C. § 707(b), we reverse and remand.

I.

The Tates filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code on January 10, 2007. They reported household income above the applicable state median income level. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) subjects debtors with above median income to a means test to determine if they qualify for Chapter 7 bankruptcy. The purpose of the means test is to determine if the debtors can repay a portion of their debt. Under the means test, if a debtor has sufficient disposable income to pay his unsecured creditors at least $166.67 each month (at least $10,000 over five years), proceedings under Chapter 7, which allows for complete discharge of debt, are considered presumptively abusive. 11 U.S.C. § 707(b)(2)(A)(ii)(I). In that situation, the debtor is usually required to proceed under Chapter 13, which allows for partial repayment of debt.

The means test takes the debtor's current monthly income and reduces it by allowed deductions set forth in 11 U.S.C. § 707(b)(2)(A)(ii)-(iv). At issue in this appeal is the transportation ownership deduction allowed under § 707(b)(2)(A)(ii)(I), which allows the debtor to deduct -

> the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii)(I).

The National and Local Standards referenced in the statute are found in the IRS's Financial Analysis Handbook which is in turn found in the IRS's Internal Revenue Manual (IRM). Revenue agents use the IRM to assess the financial condition of delinquent taxpayers to determine what they can afford to satisfy their tax debt to the government. Transportation expenses are part of the Local Standards and are divided into ownership and operating expenses.

In performing the means test, the Tates claimed the IRS Local Standard vehicle ownership allowance for two vehicles in the amounts of $471 and $332, respectively. The Tates also claimed a $343 deduction for vehicle operating expenses for the two cars they own. The Tates owe no money on these cars. Only the ownership expense is at issue in this appeal. With these deductions, the Tates' monthly disposable income under the means test was $137.66. If the Tates are allowed the transportation ownership deduction, their monthly net income falls below $166.67 and their application is not presumptively abusive. If the deduction is not allowed, the presumption of abuse applies.

The Bankruptcy Trustee filed a motion under § 707(b)(2) to dismiss the Tates' case under Chapter 7 for abuse. The motion challenged the vehicle ownership deduction and alleged that the Tates failed the means test when their expenses were properly calculated. The Tates opposed the motion. The bankruptcy court granted the Trustee's motion to dismiss. The Tates appealed. The district court affirmed the bankruptcy court's order. The district court noted that the transportation ownership expense issue had not been resolved in this circuit, but concluded that "the weight of persuasive authority in this Circuit holds that a 'debtor may not deduct the vehicle ownership expense unless the debtor has a monthly note or lease payment on a vehicle.'" The Tates appeal.

II.

The sole issue in this appeal is whether, in conducting the means test under 11 U.S.C. § 707(b), a debtor may claim a vehicle ownership expense for a vehicle that is not encumbered by a debt or a lease. We review this question of statutory interpretation de novo. *Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001).

This issue has been heavily litigated and there is a split among the courts that have addressed the issue. *See Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799, 803-06 (B.A.P. 9th Cir. 2007)(describing the split in authority). Only one circuit court has addressed this issue. As outlined by the Seventh Circuit in *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148 (7th Cir. 2008), the courts have followed two basic approaches to this issue: (1) the "plain language approach", which allows the vehicle ownership deduction even if the debtors have no monthly payment associated with the vehicle, and (2) the "IRM approach," which does not. *Id*. at 1157. Both approaches start from the text of the statute which states in part, "The debtor's monthly expenses shall be the debtor's **applicable** monthly expense amounts specified under the National Standards and Local Standards." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The approaches differ, however. in how they read the word "applicable" in the above sentence.

Courts following the "plain language" approach read the word "applicable" to refer to the selection of an expense amount from the Local Standards that relates to the geographic area in which the debtor resides and the number of vehicles the debtor owns. *Ross-Tousey,* 549 F.3d at 1157. Under the plain language approach, the vehicle ownership deduction that "applies" to a debtor is the one that corresponds to his geographic region and number of cars, regardless of whether that deduction is an actual expense. *Id*. at 1157-58. Other courts following the plain language approach include *Hildeb v. Kimbro (In re Kimbro)*, 389 B.R. 518, 532 (B.A.P. 6th Cir. 2008), and *Pearson v. Stewart (In re Pearson)*, 390 B.R. 706, 714 (B.A.P. 10th Cir. 2008), *vacated as moot*.

Courts following the IRM approach conclude that the vehicle ownership deduction is not allowed if the debtor has no debt payment. These courts reach this result by reading the word "applicable" to modify "monthly expense" amounts so the debtor can deduct this expense if he has a "relevant" ownership expense. *Ross-Tousey*, 549 F.3d at 1157-58. In other words, under this approach, if the debtor has no debt or lease payment related to a vehicle, he cannot take the ownership deduction because it is not applicable or relevant to him. This interpretation is called the IRM approach because the courts following it use the methodology of the IRM as an interpretive guide for applying the means test. *Id*. at 1158. Under this approach, courts look not only to the Local Standards but also to how the IRS uses the Local Standards in its revenue collection process. Under the IRM, if a taxpayer has no car payment, the taxpayer is only entitled to the vehicle operation deduction, not the ownership deduction. *Id*. at 1159. The main cases following the IRM approach are *In re Ransom*, 380 B.R. 799, 808 (B.A.P. 9th Cir. 2007), and *Babin v. Wilson (In re Wilson)*, 383 B.R. 729, 734 (B.A.P. 8th Cir. 2008).

The Seventh Circuit adopted the plain language approach and rejected the IRM approach for several reasons. It found the plain language approach "more strongly supported by the language and logic of the statute." *Ross-Tousey*, 549 F.3d at 1158.

> In order to give effect to all the words of the statute, the term "applicable monthly expense amounts" cannot mean the same thing as "actual monthly expenses." Under the statute, a debtor's "actual monthly expenses" are only relevant with regard to the IRS's "Other Necessary Expenses;" they are not relevant to deductions taken under the Local Standards, including the transportation ownership deduction. Since "applicable" cannot be synonymous with "actual," applicable cannot reference what the debtor's actual expense is for a category, as courts favoring the IRM approach would interpret the word. We conclude that the better interpretation of "applicable" is that it references the

5

selection of the debtor's geographic region and number of cars.

*Id.* The Seventh Circuit also noted two additional arguments in support of the plain language approach. First, section 707(b)(2)(A)(ii)(I) states that "the monthly expenses of the debtor shall not include any payments for debts." It found this language impossible to reconcile with the IRM approach which would only allow the vehicle ownership deduction if the debtor had a monthly debt payment associated with a vehicle. *Id. See also Kimbro*, 389 B.R. at 523. Second, when examining the statute more broadly, the court noted that Congress has in other circumstances been clear to state when an actual expense is required before a deduction may be allowed. *Ross-Tousey*, 549 F.3d at 1158.

> For example, section 707(b)(2)(A)(ii) uses the following phrases to describe the nature of various other deductions: "debtor's reasonably necessary expenses incurred," § 707(b)(2)(A)(ii)(I) (Family Violence Prevention and Services Act expenses); "expenses paid by the debtor that are reasonable and necessary," § 707(b)(2)(A)(ii)(II) (expenses for elderly, chronically ill or disabled immediate family members); . . . and "actual expenses [that are] are reasonable and necessary," § 707(b)(2)(A)(ii)(V) (additional home energy costs).

*Id.* (emphasis added). The absence of similar language with regard to the Local Standards suggests that the statute does not require an actual expense and the courts should not imply such a requirement. *Id.*

Rejecting the IRM approach, the court found that although the IRM provides a useful methodology for IRS agents for determining a taxpayer's ability to pay, there is no indication that Congress intended that methodology to be applied to the means test. *Id.* at 1159. Section 707(b)(2)(A)(ii)(I) refers only to "amounts specified" in the Local Standards. It does not incorporate

the IRM or the Financial Analysis Handbook into the statute or even refer to them. *Id.* We agree with the Seventh Circuit that the legislative history of § 707(b)(2)(A)(ii)(I) confirms that the provision's silence with regard to the IRM and IRS methodology was deliberate. A prior version of the BAPCPA which was not passed specifically referred to the Local Standards "as determined under the Internal Revenue Service financial analysis." The quoted language did not make it into the final bill. *Id.*

In addition, the Seventh Circuit cited practical reasons why it is inappropriate to adopt the IRM into the means test. The rules in the IRM (which do require a debt to deduct an ownership expense) should not be adopted into the means test because a revenue officer applying the IRM has substantial discretion in how to apply the rules. As explained in *Kimbro*:

> Congress intended that there be uniform and readily-applied formula for determining when the bankruptcy court should presume that a debtor's chapter 7 petition is an abuse and for determining an above-median debtor's disposable income in chapter 13. By explicitly referring to the National and Local Standards, Congress incorporated a table of standard expenses that could be easily and uniformly applied; Congress intended that the court and parties simply utilize the expense amount from the applicable column based on the debtor's income, family size, number of cars and locale. The amounts are entered into the means test form and a determination of disposable income is accomplished without judicial discretion. The clear policies behind the means test were the uniform application of a bright-line test that eliminates judicial discretion. Plainly, Congress determined that these policies were more important than accuracy.

> However, if the IRM were used to determine the amounts of expenses . . . the means test would of necessity again be a highly discretionary test, because under the IRM, a revenue officer is afforded significant discretion in determining a taxpayer's ability to pay a tax.

*Id.* at 1160 (citing *Kimbro*, 389 B.R. at 527-28).

Finally, the Seventh Circuit concluded that policy considerations supported their interpretation because costs are associated with vehicle ownership even when no lease or loan payments are due. *Id.* at 1160-61. Citing *In re Clark*, 2008 Bankr. LEXIS 427 (Bankr. E.D. Wis. Feb. 14, 2008), and Eugene Wedoff, *Means Testing in the New 707(b)*, 79 Am. Bank. L.J. 231, 257 (2005), the court observed the well known fact debtors with no car payments may nonetheless need replacement transportation during the bankruptcy proceedings. Also, disallowing the deduction has arbitrary results, punishing a debtor who completes paying for their car before filing for bankruptcy and rewarding those who make purchases closer to the time of filing. *Ross-Tousey*, 549 F.3d at 1160.

Based on our review of the statute and the case law interpreting it, we conclude that the plain language approach as set forth by the Seventh Circuit provides the best reading of § 707(b)(2)(A)(ii)(I). Therefore, we adopt that approach and reverse the judgment of the district court.

## IV.

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.