**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JASON M.
RANSOM,

       *Debtor,*

JASON M. RANSOM,

       *Appellant,*

  v.

MBNA, AMERICA BANK, N.A.,

       *Appellee,*

EXECUTIVE OFFICE OF UNITED STATES
TRUSTEE,

       *Trustee.*

No. 08-15066

BAP No.
NV-07-01254-
DBaMo

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Baum, Montali, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
June 9, 2009—San Francisco, California

Filed August 14, 2009

Before: Stephen S. Trott, M. Margaret McKeown and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Trott

11125

## COUNSEL

Christopher P. Burke, Chris P. Burke & Associates, Las Vegas, Nevada, for the appellant.

Jeremy T. Bergstrom, Miles, Bauer, Bergstrom & Winters LLP, Henderson, Nevada; and William Andrew McNeal, Becket & Lee LLP, Malvern, Pennsylvania, for appellee MBNA, America Bank, N.A.

Catherine Bentley Sevcenko, Executive Office for the United States Trustees, for amicus curiae United States of America.

Tara Twomey, San Jose, California, for amicus curiae National Association of Consumer Bankruptcy Attorneys.

---

**OPINION**

TROTT, Judge:

Does an above-median income debtor seeking bankruptcy relief under chapter 13 get to deduct from his projected disposable income (that otherwise would be available to unsecured creditors) a vehicle "ownership cost" for a vehicle he owns free and clear? Based upon our interpretation of the controlling statute, 11 U.S.C. § 707(b)(2)(A)(ii)(I), our answer is "no." Thus, we agree with the decision of our Bankruptcy Appellate Panel ("BAP"), *see Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799 (B.A.P. 9th Cir. 2007), and affirm the decision of the bankruptcy court.

I.

The facts in this case are undisputed and are taken from our BAP's decision. The debtor, Jason Ransom, filed for chapter 13 bankruptcy relief. Among his assets, he scheduled a 2004 Toyota Camry he owns free and clear of any loans or other encumbrances. In his liabilities, he scheduled a total of $82,542.93 in general unsecured claims, including a claim held by MBNA America Bank ("MBNA") in the amount of $32,896.73.

On his Statement of Current Monthly Income ("Form B22C"), Ransom reported a current monthly income of $4,248.56, and an annualized income of $50,982.72, which put him above the median income for his household size in his state of residence, Nevada. He claimed monthly expense deductions—including the vehicle "ownership cost" deduction at issue in this case—in the amount of $4,038.01, and a resulting monthly disposable income of $210.55.

In his chapter 13 plan, Ransom proposed paying $500.00 per month over sixty months, providing approximately a 25% distribution on general unsecured claims. MBNA objected to confirmation of the plan, arguing Ransom was not devoting all of his projected disposable income to fund the plan as required under 11 U.S.C. § 1325(b)(1)(B). Specifically, MBNA argued that Ransom could deduct a vehicle ownership cost only if he actually was making lease or loan payments on the vehicle and, because Ransom owned his vehicle free and clear of encumbrances and lease obligations, he was not entitled to the vehicle ownership cost deduction. Thus, MBNA argued, Ransom's projected disposable income should be $681.55 (the $210.55 he reported in disposable income plus $471.00, the amount of the vehicle ownership cost deduction to which MBNA objected).

The bankruptcy court agreed with MBNA, holding that Ransom could deduct a vehicle ownership cost only if he currently was making loan or lease payments on the vehicle. The bankruptcy court therefore entered an order denying without prejudice confirmation of the plan.

Ransom sought and obtained leave to appeal the bankruptcy court's interlocutory order to our BAP. BAP affirmed the bankruptcy court. *See Ransom*, 380 B.R. at 808-09. Concurrently with its opinion affirming the bankruptcy court, BAP certified its disposition of the case to this circuit for possible review of a non-final order. *See id.* at 809 n.21. This circuit authorized this interlocutory appeal to go forward.

## II.

A court may not approve a chapter 13 plan if the holder of an allowed unsecured claim (here, MBNA) objects to confirmation of the plan *unless* the debtor demonstrates (1) "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim"; or (2) "the plan provides that all of the debtor's pro-

jected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(A), (B). Ransom seeks to defeat MBNA's objection to his plan under the second option by demonstrating that his plan provides that all of his projected "disposable income" will be applied to make payments to unsecured creditors.

**[1]** "Disposable income" is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance and support of the debtor . . . ." 11 U.S.C. § 1325(b)(2)(A)(i). Because Ransom is an above-median income debtor, the "amounts reasonably necessary to be expended," is to be determined "in accordance with" the means test set forth in 11 U.S.C. § 707(b)(2). *See* 11 U.S.C. § 1325(b)(3).

**[2]** Under the "means test" in § 707(b)(2), a debtor's monthly expenses

> shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

The National Standards and Local Standards referenced in § 707(b)(2)(A)(ii)(I) are located in the Internal Revenue Service's ("IRS") Financial Analysis Handbook, which is, in turn, contained in the IRS's Internal Revenue Manual ("IRM"). The IRS uses the IRM in determining a taxpayer's

ability to pay a delinquent tax liability. *See In re Fowler*, 349 B.R. 414, 416 (Bankr. D. Del. 2006).

**[3]** The IRS's Local Standards include allowable transportation expenses. These transportation expenses are broken down into two categories: (1) operating costs and public transportation costs, and (2) "ownership costs."[1] It is the "ownership cost" deduction that is at issue here. Specifically, at issue is whether the ownership cost deduction is "applicable" under § 707(b)(2)(A)(ii)(I), and therefore allowed, to a debtor who owns his vehicle free and clear and thus does not have any loan or lease payments on his vehicle.

As described by our BAP, there exists "a significant split in authority" on this issue. *See Ransom*, 380 B.R. at 803-06. Some courts have allowed the deduction of an "ownership cost" for a vehicle that is subject to neither secured debt nor a lease; other courts have not. Most recently, two of our sister circuits have joined the camp allowing the deduction, which puts us in the uncomfortable position of disagreeing with them. *See Tate v. Bolen (In re Tate)*, 571 F.3d 423 (5th Cir. 2009); *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148 (7th Cir. 2008).

In *Ross-Tousey*, the Seventh Circuit adopted what has been referred to as the "plain language approach," and held that a vehicle not encumbered by a debt or lease qualified nonetheless for the "ownership cost" deduction. *Ross-Tousey*, 549 F.3d at 1157-58. The court was persuaded that § 707(b)(2)(A)(ii)(I)'s use of the adjective "applicable"— rather than "actual"—in relation to the "ownership cost" deduction refers "to the selection of an expense amount corresponding to the appropriate geographic region and number of

---

[1] The Local Standards for Transportation for the West Census Region (which includes Nevada), in effect when Ransom filed, can be found on the U.S. Trustee's website at: http://www.usdoj.gov/ust/eo/bapcpa/ 20051017/bci_data/IRS_Trans_Exp_Stds_WE.htm.

vehicles owned by the debtor." *Id.* at 1157. "In other words, under [this] approach, the Local Standard vehicle ownership deduction 'applies' to the debtor by virtue of his geographic region and number of cars, regardless of whether that deduction is an actual expense[ ]." *Id.* at 1157-58.

In *Tate*, the Fifth Circuit found the "plain language approach," as set forth by the Seventh Circuit in *Ross-Tousey*, to provide the "best reading of § 707(b)(2)(A)(ii)(I)," and therefore also adopted that approach. *Tate*, 571 F.3d at 427.

However, roughly half of the courts to address the issue, including our BAP and the Eighth Circuit BAP, have found a debtor is entitled to the ownership cost deduction only if the debtor actually has loan or lease payments on a vehicle. *See, e.g.*, *Ransom*, 380 B.R. at 809; *Babin v. Wilson (In re Wilson)*, 383 B.R. 729, 734 (B.A.P. 8th Cir. 2008); *In re Coffin*, 396 B.R. 804, 809 (Bankr. D. Me. 2008); *Grossman v. Sawdy*, 384 B.R. 199, 203, 205 (E.D. Wis. 2008); *In re Slusher*, 359 B.R. 290, 308-09 (Bankr. D. Nev. 2007). These courts reason that the ownership cost deduction is "applicable" only if the debtor is in fact incurring such an expense in the form of a loan or lease payment on a vehicle, i.e., that "applicable" means that a debtor actually is making a loan or lease payment. *See, e.g.*, *Wilson*, 383 B.R. at 732-33 ("[A] vehicle ownership expense is only applicable if a debtor is in fact incurring such an expense."); *Grossman*, 384 B.R. at 204 ("[T]he word 'applicable' is meant to modify the term 'monthly expenses.' Therefore, the deduction is to be used if and only if the debtor actually has the monthly expense of an actual car payment." (citation omitted)). In other words, these courts equate "ownership cost" with "loan or lease payments."

In reaching the conclusion that a debtor is entitled to the ownership cost deduction only if the debtor actually has loan or lease payments on a vehicle, some courts have adopted what has been referred to as the "IRM approach," which relies

on the IRS's interpretation of "applicable" contained in the IRM. The courts employing the IRM approach reason that because Congress incorporated the IRS National and Local Standards into § 707(b)(2)(A)(ii)(I), it must have intended "courts to look at how the IRS defines these categories, and how the IRS calculates those expenses." *Slusher*, 359 B.R. at 309; *see Grossman*, 384 B.R. at 204 (relying on the IRS's interpretation of the Local and National Standards in concluding that a debtor must have a car payment to take the ownership cost deduction); *Wilson*, 383 B.R. at 733 (same).

> Under this reading, "actual" and "applicable" do mean two different things—one is a limitless deduction within the specified categories of Other Necessary Expenses, and the other is a deduction limited to the amount and type specified by the IRS. Had Congress intended to indiscriminately allow all expense amounts specified in the National and Local Standards, it would have written 707(b)(2)(A)(ii)(I) to read, "The debtor's monthly expenses shall be the monthly expense amounts specified under the National Standards and Local Standards . . . " rather than "The debtor's monthly expenses shall be *the debtor's applicable* monthly expense amounts specified under the National and Local Standards . . . ." This distinction may not appear from the dictionary definitions of both terms, but it did, and does, belong to the IRS' historical and practical use of those standards at the time Congress adopted BAPCPA. In referring to such specialized standards, it would be quite odd if Congress intended to preclude courts from examining the context in which the authoring agency, the IRS, used and employed those standards.

*Slusher*, 359 B.R. at 308-09 (citation omitted) (emphasis in original).

The IRS Collection Financial Standards, which are used in calculating repayment of delinquent taxes, provide: "If a taxpayer has a car, but no car payment, only the operating costs portion of the transportation standard is used to figure the allowable transportation expense." *See* IRS Collection Financial Standards (March 1, 2009).[2] The IRM similarly requires a taxpayer to have a loan or lease payment to qualify for the ownership cost deduction. *See* Internal Revenue Service Manual, Financial Analysis Handbook, Pt. 5, ch. 15, § 5.15.1.9 (1.B) (May 29, 2008).[3]

This approach also is arguably supported by Congress's intent in implementing the means testing as part of BAPCPA —"to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. 109-31(I), at 1, *reprinted in* 2005 U.S.C.C.A.N. 88, 89.

### III.

[4] As did our BAP, we decide this issue not on the IRS's manual, but instead on the "statutory language, plainly read," *Ransom*, 380 B.R. at 806 n.18, which we believe does not allow a debtor to deduct an "ownership cost" (as distinct from an "operating cost") that the debtor does not have. An "ownership cost" is not an "expense"—either actual or applicable —if it does not exist, period. Ironic it would be indeed to diminish payments to unsecured creditors in this context on the basis of a fictitious expense not incurred by a debtor.

Accordingly, we adopt the cogent reasoning of our BAP, as follows:

---

[2]The current IRS Collection Financial Standards for Local Transportation can be found at: http://www.irs.gov/businesses/small/article/0,,id=104623,00.html.

[3]The portion of the current Internal Revenue Service Manual, Financial Analysis Handbook, discussing transportation cost deductions can be found at: http://www.irs.gov/irm/part5/irm_05-015-001.html#d0e1005.

Congress has deemed the expense of owning a car to be a basic expense that debtors can deduct in calculating what they can afford to pay to their creditors. However, in making that calculation, what is important is the payments that debtors actually make, not how many cars they own, because the payments that debtors make are what actually affect their ability to make payments to their creditors.

The statute is only concerned about protecting the debtor's ability to continue owning a car, and if the debtor *already* owns the car, the debtor is adequately protected . . . . When the debtor has no monthly ownership expenses, it makes no sense to deduct an ownership expense to shield it from creditors.

Section 707(b)(2)(A)(ii)(I) provides, in relevant part, that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under . . . the Local Standards." As set forth in the statute, the adjective "applicable" modifies the meaning of the noun "monthly expense amounts;" it indicates that the deduction of the monthly expense amount specified under the Local Standard for the expense becomes relevant to the debtor (i.e., appropriate or applicable to the debtor) when he or she in fact has such an expense.

The ordinary, common meaning of "applicable" further impels us to this conclusion. "Applicable," in its ordinary sense, means "capable of or suitable for being applied." Merriam-Webster's Collegiate Dictionary 60 (11th ed. 2005). Given the ordinary sense of the term "applicable," how is the vehicle ownership expense allowance *capable of being applied* to the debtor if he does not make any lease or loan payments on the vehicle? In other words, how can the debtor assert a deduction for an expense he does not

have? If we granted the debtor such an allowance, we would be reading "applicable" right out of the Bankruptcy Code.

The debtor also argues for allowance of the vehicle ownership expense deduction on equitable grounds. He claims that, due to the age of the car, the likelihood of major repairs and the costs of such repairs will increase. He further contends that the allowable operating costs under the Local Standards do not take into account the costs of major repairs.

However, as the court in [*In re Carlin*, 348 B.R. 795 (Bankr. D. Or. 2006)] noted:

> Numerous safeguards are in place to protect both debtors and creditors. Debtors who own old or high mileage cars "free and clear," are entitled to an extra $200 per month operating expense. Also, a "free and clear" owner is not "stuck" with the vehicle operating expenses allowed under the IRS Standards. Section 707(b)(2)(B) is also available for "above the median" Chapter 13 debtors. Section 707(b)(2)(B), allows additional expenses based on "special circumstances."

348 B.R. at 798 (citations omitted). We agree with the court in *Carlin* and conclude that the debtor's appeal to equity is unavailing.

Further, our interpretation of § 707(b)(2)(A)(ii)(I) has a substantive effect that is consistent with the underlying goals of BAPCPA. *Cf.* [*United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988)]. To interpret the statute otherwise is counterintuitive to one of the main objectives of

> BAPCPA: to ensure that debtors repay as much of their debt as reasonably possible. When viewed within the larger context of BAPCPA, we believe the statute can only be interpreted to "apply" expense standards in cases where debtors in fact pay such expenses.

*Ransom*, 380 B.R. at 807-08 (footnote and some citations omitted).

## IV.

[5] The "correct" answer to the question before us, which the courts have been struggling with for years—at the unnecessary cost of thousands of hours of valuable judicial time—depends ultimately not upon our interpretation of the statute, but upon what Congress wants the answer to be. We would hope, in this regard, that we the judiciary would be relieved of this Sisyphean adventure by legislation clearly answering a straightforward policy question: shall an above-median income debtor in chapter 13 be allowed to shelter from unsecured creditors a standardized vehicle ownership cost for a vehicle owned free and clear, or not? Because resolution of this issue rests with Congress, we have taken the unusual step of directing the Clerk of the Court to forward a copy of this opinion to the Senate and House Judiciary Committees.

**AFFIRMED.**