# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 08-2023/08-2024
_____

In re: Robert Earl Washburn,          *
                                      *
            Debtor.                   *
                                      *
------------------------------------- *
                                      *
eCast Settlement Corporation,         *
                                      *
            Creditor - Appellant,     *
                                      *   Appeals from the United States
      v.                              *   Bankruptcy Court for the Eastern
                                      *   District of Arkansas.
Robert Earl Washburn,                 *
                                      *
            Debtor - Appellee.        *
                                      *
------------------------------------- *
                                      *
Joyce Bradley Babin,                  *
                                      *
            Trustee - Appellant,      *
                                      *
      v.                              *
                                      *
Robert Earl Washburn,                 *
                                      *
            Debtor - Appellee.        *
                                      *

```
---------------------------------------------   *
                                                 *
United States of America,                        *
                                                 *
              Amicus Curiae.                      *
                        _____
```

Submitted: December 12, 2008
Filed: August 28, 2009
_____

Before MELLOY and BENTON, Circuit Judges, and MAGNUSON, District Judge.[1]
_____

MELLOY, Circuit Judge.

Creditor eCAST Settlement Corporation ("eCAST") and Trustee Joyce Bradley Babin (the "Trustee") appeal the bankruptcy court's[2] approval of Debtor Robert Earl Washburn's Chapter Thirteen reorganization plan. The appellants challenge the bankruptcy court's approval of a $471 monthly vehicle-ownership expense for a vehicle that the debtor owns outright and that is not encumbered by a lien. We granted eCAST's motion seeking a direct appeal to our court, and we now affirm the judgment of the bankruptcy court. In doing so, we join the Fifth and Seventh Circuits in construing the plain language of 11 U.S.C. § 707(b)(2)(A)(ii)(I) to permit a debtor with above-median income to claim a vehicle-ownership expense for a vehicle that the debtor owns outright and without encumbrance. In re Tate, 571 F.3d 423 (5th Cir. 2009); In re Ross-Tousey, 549 F.3d 1148 (7th Cir. 2008).

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Audrey R. Evans, United States Bankruptcy Judge for the Eastern District of Arkansas.

-2-

I.    General Background

This case involves no disputed facts, and our review relates solely to a question of statutory interpretation. "Because we are reviewing only legal conclusions made by the bankruptcy court, our review is *de novo*." In re Frederickson, 545 F.3d 652, 656 (8th Cir. 2008), cert. denied, 129 S. Ct. 1630 (2009).

Washburn has above-median income. See 11 U.S.C. § 1325(b)(3). As such, Chapter Thirteen of the Bankruptcy Code requires that his reorganization plan include payment of his "projected disposable income," id. § 1325(b)(1)(B), to his unsecured creditors for an "applicable commitment period" of sixty months. Id.; see Frederickson, 545 F.3d at 660 (holding that a bankruptcy court cannot approve a Chapter Thirteen plan over a trustee's objection if the debtor has above-median income unless the plan "extends for the entire sixty-month applicable commitment period"). Washburn sought to exclude from his projected disposable income $471 per month that he classified as a vehicle-ownership expense related to a vehicle he owned outright. With this amount excluded from his projected disposable income, his monthly payments to creditors during the applicable sixty-month commitment period would be insufficient to pay the claims of his unsecured creditors in full. According to the Trustee's calculations, denial of the vehicle-ownership expense and inclusion of this amount in his monthly payments to creditors would completely satisfy the unsecured creditors' claims.

The term "projected disposable income" is not defined. In a Chapter Thirteen reorganization, courts are to apply the Chapter Seven "means test" to determine "disposable income." 11 U.S.C. § 1325(b)(2)–(3) (defining "disposable income" in part as "current monthly income . . . less amounts reasonably necessary to be expended" for several purposes, and cross referencing 11 U.S.C. § 707(b)(2)(A) and (B) for determination of some of those "amounts"). As relevant to the presently disputed expense, the Chapter Seven means test contains a further cross reference to

Internal Revenue Service ("IRS") National and Local Standards to define "applicable monthly expense amounts":

> The debtor's monthly expenses shall be the debtor's *applicable monthly expense amounts* specified under the [IRS's] National Standards and Local Standards, and the debtor's *actual monthly expenses* for the categories specified as Other Necessary Expenses issued by the [IRS] for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

Id. § 707(b)(2)(A)(ii)(I) (emphasis added).

Section 707(b)(2)(A)(ii)(I) separately identifies "applicable monthly expense amounts" and "actual monthly expenses." The vehicle-ownership expense at issue in the present case is one of the "applicable monthly expense amounts" specified in the IRS's Local Standards as a transportation expense. It is undisputed that the separate term, "actual monthly expenses," refers to expenses that the debtor in fact incurs. The question we must resolve in the present case is whether "applicable monthly expense amounts" similarly means an expense that the debtor in fact incurs or whether this term means merely the IRS-designated expense amounts listed as Local Standards applicable in a given geographic region for a debtor's number of vehicles.

Lower courts are split on this issue. See In re Ransom, 380 B.R. 799, 803–06 (9th Cir. BAP 2007) (cataloging cases); see also Ross-Tousey, 549 F.3d at 1156–57 (same). Both interpretations of the statute are reasonable and enjoy textual and policy-based support. Those courts holding that a debtor need not have a vehicle loan or lease payment to claim a vehicle ownership expense amount apply what has commonly been called the plain language approach. The plain language approach

-4-

relies in large part upon a perceived distinction between the terms "applicable" and "actual" but also enjoys several other textual and policy-based sources of support. Those courts holding that a debtor must have a vehicle loan or lease payment to claim the monthly expense amount apply what has commonly been called the Internal Revenue Manual, or IRM, approach. The IRM approach incorporates a mode of expense analysis borrowed from the Internal Revenue Manual, a manual that revenue agents use to assess delinquent taxpayers' abilities to pay taxes. As applied in the present context, and as described by the separate appellants, the IRM approach would either (1) condition the availability of the categorical expense amount on the existence of a vehicle payment, or (2) permit courts to use the vehicle expenses a debtor in fact incurs up to the categorical amounts specified in the Local Standards.[3] Like the plain language approach, the IRM approach enjoys some textual and policy-based support.

II.     Fifth and Seventh Circuit Approach

The Fifth and Seventh Circuit Courts of Appeals have addressed this issue and determined that the plain language approach is the better-reasoned mode of analysis. In Ross-Tousey, the Seventh Circuit provided a comprehensive discussion of the statutory text, competing interpretations of the text, competing arguments regarding legislative intent, and policy-based arguments related to the practical consequences of the competing interpretations. See Ross-Tousey, 549 F.3d at 1156–62. The Fifth Circuit adopted the position of the Seventh Circuit, citing Ross-Tousey and incorporating its analysis. See Tate, 571 F.3d at 426–28. The Ninth Circuit, in In re Ransom, ___ F.3d ___, No. 08-15066, 2009 WL 2477609 (9th Cir. Aug. 14, 2009), reached the opposite conclusion.

---

[3]At oral argument, the separate appellants offered different explanations as to whether the IRM approach would grant debtors an expense equal to their vehicle payment or whether it merely conditioned use of the categorical expense on the existence of some vehicle payment.

Having carefully considered the thorough analyses from these circuits and the arguments discussed by bankruptcy appellate panels and district courts that have considered this issue in their appellate capacities, we hold that the plain language approach adopted by the Fifth and Seventh Circuits results in the proper interpretation of 11 U.S.C. § 707(b)(2)(A)(ii)(I). We summarize this approach below and address arguments raised by the present appellants but not fully addressed by the Seventh Circuit in Ross-Tousey.

       a.      Statutory Text

The Seventh Circuit's analysis of the statutory text emphasized three points. First, the court noted Congress's election to use the separate terms "applicable" and "actual" in close proximity to one another and concluded simply that the two terms should not be deemed synonymous if all the words of the text were to be given effect. Ross-Tousey, 549 F.3d at 1157–58; see, e.g., Thomas & Wong Gen. Contr. v. The Lake Bank N.A., 553 F.3d 650, 653 (8th Cir. 2009) ("A statute should be interpreted to give effect to all of its provisions and no word, phrase, or sentence should be deemed superfluous, void, or insignificant."). The Seventh Circuit stated:

> In order to give effect to all the words of the statute, the term "applicable monthly expense amounts" cannot mean the same thing as "actual monthly expenses." Under the statute, a debtor's "actual monthly expenses" are only relevant with regard to the IRS's "Other Necessary Expenses;" they are not relevant to deductions taken under the Local Standards, including the transportation ownership deduction. Since "applicable" cannot be synonymous with "actual," applicable cannot reference what the debtor's actual expense is for a category, as courts favoring the IRM approach would interpret the word. We conclude that the better interpretation of "applicable" is that it references the selection of the debtor's geographic region and number of cars.

Ross-Tousey, 549 F.3d at 1158. Simply put, "Congress used two different terms to achieve two different results." In re Chamberlain, 369 B.R. 519, 525 (Bankr. D. Ariz. 2007). Second, the Seventh Circuit proceeded to note that "[i]t is difficult to square" the IRM approach, "which would only allow the vehicle ownership deduction on condition of a monthly debt payment," Ross-Tousey, 549 F.3d at 1158, with that portion of § 707(b)(2)(A)(ii)(I) that provides, "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." Finally, the court cited several other statutory sections to illustrate "that when Congress intended to condition a deduction on a debtor's actual expenditure or showing of need, it did so." Ross-Tousey, 549 F.3d at 1158. The court concluded that because Congress had not employed similar language expressly conditioning "applicable monthly expense amounts" on the existence of a corresponding debt, it was appropriate to treat "applicable monthly expense amounts" in a categorical fashion based on a debtor's geographic location and number of vehicles rather than making such expense amounts available only on condition of a vehicle-related debt. Id.

b.      Legislative Intent and History

The Seventh Circuit noted that Congress had failed to pass an earlier version of the statute that would have expressly incorporated the IRM standards into § 707(b)(2)(A)(ii)(I). Id. at 1159. Instead, Congress ultimately passed the current statutory language that refers only to "amounts specified in the National and Local Standards." Id. (citing H.R. 3150, 105th Congress (1998)). The court stated, "This change indicates Congress's intent that courts not be bound by the financial analysis contained in the IRM and supports the conclusion that courts should look only to the numeric amounts set forth in the Local Standards." Id.

In addition, the court identified the reduction of judicial discretion and the incorporation of "a uniform and readily-applied formula," id. at 1160 (quotation

omitted), for performing the means test as important aspects of Congressional intent surrounding the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The court found such intent inconsistent with the implied incorporation of the IRM standards because the IRM standards vest revenue officers with discretion, and use of the IRM standards in the context of the Chapter Seven means test would, necessarily, vest bankruptcy judges with similar discretion. Id.

Further, as noted by a Sixth Circuit Bankruptcy Appellate Panel in In re Kimbro, 389 B.R. 518, 527 (6th Cir. BAP 2008), the IRS itself disavows any intent to have the financial standards from the IRM apply in any context other than tax collection and specifically disclaims any intent to have the IRM apply in the context of bankruptcy expense calculations:

> Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective on March 1, 2008 for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.

Id. (quoting http://www.irs.gov/individuals/article/0,,id=96543,00.html). As such, the court in Kimbro found that the intent of the administrative body that formulated the IRM, as well as legislative intent, supported a refusal to incorporate the IRM into the means test for determination of disposable income. Id. at 526–27.

We, too, have recognized the reduction of judicial discretion as one aspect of Congress's intent surrounding BAPCPA. See Frederickson, 545 F.3d at 658 ("In enacting BAPCPA, Congress reduced the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses."). We have acknowledged, however, that it was also "Congress's intent that under BAPCA increased payments will flow from above-median debtors to their unsecured creditors," id., and that Congress "enacted [BAPCPA] to ensure that

-8-

debtors repay creditors the maximum they can afford." Id. at 657 (internal quotation omitted). We do not believe that these different expressions of intent detract from the soundness of the court's ruling in Ross-Tousey. As we noted in Frederickson, "Congress rigidly defined 'disposable income' in 11 U.S.C. § 1325(b)(2) [but] did not define 'projected disposable income' as used in 11 U.S.C. § 1325(b)(1)(B)." Id. at 658. Ross-Tousey, involved application of the Chapter Seven means test, and our case today involves application of that same means test as incorporated by 11 U.S.C. § 1325(b)(3) to define "disposable income." As applied in this context, we find the Seventh Circuit's analysis of Congressional intent to be sound.[4]

c.    Policy Considerations

The court in Ross-Tousey noted that "[d]ebtors who own their cars outright would have . . . potential need for vehicle replacement, so . . . they are . . . entitled to the deduction even though the deduction amount may exceed their actual costs." 549 F.3d at 1161. The court further noted that ownership expenses are not limited solely to vehicle payments, and as such, could be sporadic and uncertain. Id. In addition, conditioning the vehicle-ownership expense on the existence of a pre-bankruptcy vehicle-related debt would punish debtors who elect to drive more modest vehicles or fully pay for vehicles prior to bankruptcy and reward debtors who incurred vehicle debt shortly before declaring bankruptcy. The Seventh Circuit found that this result

---

[4]Shortly before oral argument, appellant eCast submitted a letter of authority under Eighth Circuit Rule of Appellate Procedure 28(j) citing Frederickson, 545 F.3d at 660. At oral argument, eCast asserted that Frederickson, with its emphasis on maximizing payments to creditors and its recognition of judicial discretion in determining projected disposable income, is dispositive in the present case. The issue before our court today is the proper interpretation of 11 U.S.C. § 707(b)(2)(A)(ii)(I). We discuss below the relationship between this issue and the issue before the court in Frederickson, i.e., the recognition of a distinction between disposable income and projected disposable income.

would be "arbitrary and unfair . . . . especially in light of the fact that one of BAPCPA's purposes was to make it more difficult to discharge consumer debts." Id.

To the extent that the appellants argue that the "applicable monthly expense amount" need not be limited to the precise amount of a debtor's vehicle payment but only that such a payment must in fact exist before the vehicle-ownership expense becomes "applicable," the arbitrariness of the result is particularly difficult to accept. Such an approach would permit a debtor with a modest lease or loan payment (or a few remaining payments) to claim the much larger, entire categorical amount for their geographic region under the IRS Local Standards. The unlucky debtor who responsibly paid off his or her vehicle prior to bankruptcy, however, would be denied the same expense. When appellants argue that it would be unfair to creditors and contrary to legislative intent to permit debtors without vehicle payments to claim the expense, then, the purported unfairness and contravention of legislative intent is merely a matter of degree. Whether the claimed expense is, as characterized by appellants, a "phantom expense" or whether it is a categorical expense substantially greater in size than a debtor's vehicle payment, the net effect may be the denial of otherwise available funds to creditors based on application of a categorical rule.

> d.    Countervailing Arguments

The countervailing arguments and the present appellants' arguments depend largely on broad statements of legislative intent. As described by an Eighth Circuit Bankruptcy Appellate Panel in In re Wilson, 383 B.R. 729 (8th Cir. BAP 2008), "the purpose of [the BAPCPA] amendments to §§ 707(b) and 1325(b) was to require above-median income debtors to make more funds available to their unsecured creditors, and to do so by limiting the court's authority to allow expenses." Id. at 733; see also Frederickson, 545 F.3d at 658–60. In Ross-Tousey, the Seventh Circuit found arguments based on this intent relatively non-compelling in the context of a Chapter Seven bankruptcy case. There the court noted that, in Chapter Seven, the

means test is for determining whether a bankruptcy petition is presumptively abusive. Ross-Tousey, 549 F.3d at 1161. Even where a petition is not presumptively abusive, a court may still find a Chapter Seven petition abusive for reasons of "bad faith or based on the totality of the circumstances." Id. at 1162. Accordingly, in the context of Chapter Seven, it is unnecessary to incorporate the IRM into the means test to honor the Congressional intent of limiting the courts' ability to allow expenses and making it more difficult to discharge consumer debt. Rather, the catch-all provisions of Chapter Seven provide a backstop that permits the dismissal of abusive Chapter Seven petitions.

Our case, however, arises under Chapter Thirteen rather than Chapter Seven, and the same issues of presumptive abusive or non-presumptive abuse are not directly in play. Still, the question before us today is how to properly interpret a provision of Chapter Seven, and we do not believe it is appropriate to give § 707 (b)(2)(A)(ii)(I) one meaning when applied in a Chapter Seven proceeding and another when applied in a Chapter Thirteen proceeding without a legislative basis for doing so. Accordingly, even though the argument based on BAPCPA's intent to make more funds available to creditors is more compelling in the present case than in Chapter Seven cases such as Ross-Tousey or Tate, we find the Seventh and Fifth Circuits' balancing of competing legislative intentions convincing. Accordingly, we hold that a debtor need not in fact owe a vehicle loan or lease payment to claim a vehicle-ownership expense in accordance with § 707(b)(2)(A)(ii)(I).

III. "Disposable Income" and "Projected Disposable Income"

Our court issued Frederickson after the parties submitted their briefs in the present case, and the appellants subsequently identified Frederickson as supplemental authority. eCAST asserts Frederickson as controlling precedent requiring reversal because Frederickson recognized the existence of judicial discretion in determining

-11-

projected disposable income, 545 F.3d at 659, and because judicial discretion appears inconsistent with Ross-Tousey and Tate.

While eCAST is correct in its characterization of Frederickson as recognizing discretion in determining projected disposable income, the question in Frederickson was different than the question at hand. There, we recognized a distinction between disposable income and projected disposable income. Id. We found the latter to be a forward-looking term rather than merely a mechanically derived and strictly defined term like disposable income. We ultimately recognized the existence of "some" judicial discretion to look beyond disposable income calculations in determining projected disposable income. Id. In doing so, we stated:

> Thus, a distinction can be drawn between a debtor's "disposable income," which is calculated solely on the basis of historical numbers and regional averages, and a debtor's "projected disposable income," which necessarily contemplates a forward-looking number. *Under this interpretation, bankruptcy courts will continue to have some discretion over the calculations of each individual debtor's financial situation, with the result that the debtor's "projected disposable income" will end up more closely aligning with reality.* This interpretation also comports with the congressional intent that above-median debtors pay the maximum they can afford . . . .
>
> Accordingly, we adopt the view shared by many bankruptcy courts that a debtor's "disposable income" calculation . . . is a starting point for determining the debtor's "projected disposable income," but that the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses . . . .

Id. (emphasis added). Subsequently, the Seventh, Fifth, and Tenth Circuits have agreed with our conclusion. See In re Turner, ___ F.3d ___, No. 08-2613, 2009 WL 2136867, at *6 (7th Cir. July 20, 2009); In re Nowlin, ___ F.3d ___, No. 08-20066, 2009 WL 2105356, at *6 (5th Cir. July 17, 2009); In re Lanning, 545 F.3d 1269, 1282

-12-

(10th Cir. 2008). But see In re Kagenveama, 541 F.3d 868, 872–75 (9th Cir. 2008) (adopting a mechanical or non-discretionary approach to defining projected disposable income).

Neither our opinion in Frederickson nor the other circuits' opinions regarding projected disposable income characterize the discretion under § 1325(b)(1)(B) as unfettered, and none discuss discretion in the context of applying § 707(b)(2)(A)(ii)(I) to calculate disposable income. In Frederickson, we faced no question regarding how to interpret the Chapter Seven provisions expressly incorporated into Chapter Thirteen. Rather, we called the determination of disposable income a process based on "historical numbers and regional averages" and disposable income itself a "starting point" for determining projected disposable income. Frederickson, 545 F.3d at 659.

In a more recent Rule 28(j) letter citing Nowlin, the appellants urge us to apply Nowlin and other circuit-level cases that agree with Frederickson as separate and independent bases for reversing the bankruptcy court in the present case. The appellants appear to argue that, even if our application of the Chapter Seven means test results in allowance of the $471 categorical expense, we should direct the bankruptcy court to depart from the disposable income "starting point" and disregard this expense when determining projected disposable income.

We are not inclined to do so in the present case for several reasons. First, there is no indication that the parties made any such arguments to the bankruptcy court, and despite the fact that Frederickson is a later-decided case, we believe the appellants needed to make some argument to the bankruptcy court attempting to distinguish projected disposable income from disposable income to now receive relief based on this theory. Further, we are not inclined to appropriate for ourselves in the first instance the fact-intensive analysis required to apply Frederickson and assess the propriety of any such distinction in the present case.

Finally, to the extent it is appropriate to employ a less-mechanistic method for calculating projected disposable income when compared to disposable income, it is by no means clear that attempted prediction of future vehicle-ownership expense could serve as a sufficiently certain basis for departing from the disposable income definition in the present case. We stated in Frederickson that the discretion held by bankruptcy courts was to permit projected disposable income to "more closely align[] with reality." Id. at 659. We did not, however, suggest that it would be appropriate to engage in speculation.

In Nowlin, the Fifth Circuit went farther, stating that disposable income "is presumptively the debtor's 'projected disposable income' under § 1325(b)(1)(B), but that any party may rebut this presumption by presenting evidence of present or reasonably certain future events that substantially change the debtor's financial situation." Nowlin, 2009 WL 2105356, at *6. We recently applied the standard from Nowlin. See In re Lasowski, ___ F.3d ___, No. 08-2017, 2009 WL 2448246, at *3 (8th Cir. Aug. 12, 2009) ("[T]he bankruptcy court's calculation of a debtor's projected disposable income can take into account changes in the debtor's financial circumstances that are reasonably certain to occur during the term of the debtor's proposed plan."). Similarly, in Turner, the Seventh Circuit cautioned against speculative departures from the disposable income calculations, stating, "bankruptcy judges must not engage in speculation about the future income or expenses of the Chapter 13 debtor. That would unsettle and delay the Chapter 13 process as well as exaggerate how accurately a person's economic situation in five years can be predicted." Turner, 2009 WL 2136867, at *7. Here, the appellants neither preserved the issue addressed in Frederickson for review nor developed a record sufficient to enable anything more than a speculative assessment of whether projected disposable income should, on the present facts, differ from disposable income. Unlike the facts of Lasowski, where it was reasonably certain that the debtor would fully pay off a loan from her 401(k) retirement account during the period of plan administration, it is by

no means clear that the present debtor's future vehicle payments can be deemed "reasonably certain."[5]

We note that our current holding, coupled with <u>Frederickson</u>, comports with the Seventh Circuit's holdings in both <u>Turner</u> and <u>Ross-Tousey</u>: determination of a vehicle-ownership expense for the purpose of determining disposable income is categorical under § 707(b)(2)(A)(ii)(I), but "some discretion" exists for bankruptcy courts to consider the debtor's actual financial situation in determining projected disposable income for the purpose of § 1325(b)(1)(B). <u>Lasowski</u> recognized that this discretion must be based on reasonably certain future events, and we leave for another day the question of whether the requisite certainty is present when addressing questions of vehicle expenses.

For the foregoing reasons, we affirm the judgment of the bankruptcy court.

MAGNUSON, District Judge, dissenting.

When unsecured creditor eCAST and the bankruptcy Trustee objected to the confirmation of Washburn's proposed Chapter 13 plan in this case, section 1325(b) prohibited the bankruptcy court from confirming that plan "unless, as of the effective date of the plan . . . the plan provides that all of the debtor's projected disposable income . . . beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(2)(B). Because Washburn's plan did not provide that all of his projected disposable income would go to pay unsecured creditors, I believe that the Bankruptcy Court's decision affirming the plan should be reversed.

---

[5]The record reflects that the debtor's vehicle is a 1996 pickup, but does not reflect the condition of the vehicle. It is not the role of an appellate court to speculate as to the debtor's likely need to replace that vehicle in the course of the next sixty months.

As the majority acknowledges, there is a split of authority as to the proper reading of the dense and confusingly written Bankruptcy Code with respect to the deduction at issue here. The majority contends that the so-called "plain language approach" requires the Court to define section 707(b)(2)(A)(ii)(I)'s "applicable monthly expense amounts" differently from that section's "actual monthly expenses." I agree with the Ninth Circuit Court of Appeals, however, that the "statutory language, plainly read" mandates a different result. In re Ransom, — F.3d. —, 2009 WL 2477609, at * 4 (9th Cir. Aug. 14, 2009) (quoting In re Ransom, 380 B.R. 799, 806 n.18 (B.A.P. 9th Cir. 2007)). Using this approach,

> a debtor [is not allowed] to deduct an "ownership cost" (as opposed to an "operating cost") that the debtor does not have. An "ownership cost" is not an "expense" – either actual or applicable – if it does not exist, period. Ironic it would be indeed to diminish payments to unsecured creditors in this context on the basis of a fictitious expense not incurred by a debtor.

Id.

Only this approach comports with Congress's intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 202-03. The reforms enacted were intended "to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. 109-31(I), at 1, reprinted in 2005 U.S.C.C.A.N. 88, 89; see also supra at 8-9 (citing In re Frederickson, 545 F.3d 652, 657-58 (8th Cir. 2008)). Here, Washburn's projected disposable income is $471 per month greater than his plan suggests it is. Over the life of the plan, his unsecured creditors will receive more than $28,000 less than they are entitled to receive. Allowing a debtor to avoid paying more than $28,000 to his unsecured creditors flies in the face of all Congress intended to accomplish with BAPCPA.

Accordingly, I dissent.

_____