In re Jason M. RANSOM, Debtor.

Jason M. Ransom, Appellant,

v.

MBNA America Bank, N.A., Appellee.

BAP No. NV–07–1254–DBaMo.
Bankruptcy No. 06–11566–BAM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued by Video Conference and Submitted on Nov. 28, 2007.

Filed Dec. 27, 2007.

Christopher P. Burke, Christopher P. Burke & Associates, Las Vegas, NV, for Appellant.

Jeremy T. Bergstrom, Esq., Miles, Bauer, Bergstrom & Winters LLP, Henderson, NV, for Appellee.

Before: DUNN, BAUM [1] and MONTALI, Bankruptcy Judges.

---

1. Hon. Redfield T. Baum, Sr., Chief Judge of the U.S. Bankruptcy Court for the District of Arizona, sitting by designation.

## OPINION

DUNN, Bankruptcy Judge:

In this interlocutory appeal, we face another interesting issue of statutory construction under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), this time concerning § 707(b)(2)(A)(ii)(I).[2] Specifically, in calculating the projected disposable income of an above-median income debtor for purposes of chapter 13 plan confirmation, we must determine whether § 707(b)(2)(A)(ii)(I) permits the debtor to deduct a vehicle ownership expense for a vehicle owned free and clear of any liens and encumbrances. Based on the language of § 707(b)(2)(A)(ii)(I), we conclude that the debtor cannot take such a deduction and AFFIRM.

## I. FACTS

The facts are undisputed. On July 5, 2006, the debtor, Jason Ransom, filed for bankruptcy relief under chapter 13. Among his assets, he scheduled a 2004 Toyota Camry, which had no liens or encumbrances against it. Among his liabilities, he scheduled a total of $82,542.93 in general unsecured claims, with MBNA America Bank ("MBNA") holding a claim of $32,896.73. The debtor reported net monthly income of $504.15, based on a monthly income of $2,806.84, after payroll deductions, per Schedule I, and monthly expenses of $2,302.69, per Schedule J.

On his Statement of Current Monthly Income ("Form B22C"), the debtor reported current monthly income of $4,248.56 and an annualized income of $50,982.72, which was above the median income for a Nevada household of one.[3] On his Form B22C, the debtor listed deductions totaling $4,038.01, including a $471 vehicle ownership expense. Based on these deductions and his current monthly income, the debtor calculated $210.55 in monthly disposable income.

In his chapter 13 plan, the debtor proposed to pay $500 per month over 60 months, providing approximately a 25% distribution on general unsecured claims.

MBNA objected to confirmation of the plan, arguing that the debtor was not devoting all of his projected disposable income to fund the plan pursuant to § 1325(b)(1)(B).[4] As the debtor's income was above the median, § 707(b)(2)(A)(ii)(I), which incorporates expenses specified in the Internal Revenue Service ("IRS") Local Standards, sets the standards for determining his reasonably necessary expenses for purposes of calculating his disposable income.

Turning to the IRS's Internal Revenue Manual ("Manual") for guidance,[5] MBNA contended that the debtor can only deduct a vehicle ownership expense when he makes lease or loan payments on the vehicle. As the debtor owned the car free of

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated as of October 17, 2005, the effective date of most of the provisions of BAPCPA, Pub.L. 109–8, 119 Stat. 23.

3. At the time, the median income in Nevada for a household of one was $38,506.

4. The chapter 13 trustee and Chase Manhattan Bank ("Chase"), another general unsecured creditor, objected to confirmation of the plan as well, advancing the same arguments as MBNA. (In fact, Chase filed a joint objection with MBNA.) Neither the trustee nor Chase is participating in the appeal before us.

5. MBNA referenced Part 5, Chapter 15, Section 1 of the Manual, entitled "Financial Analysis Handbook."

encumbrances or lease obligations, he could not deduct the $471 vehicle ownership expense from his current monthly income. Thus, MBNA concluded, the debtor's projected disposable income should be $681.55,[6] all of which should be used to fund the plan.

The bankruptcy court agreed with MBNA, relying on its published decision, *In re Slusher*, 359 B.R. 290 (Bankr.D.Nev. 2007).[7] On June 6, 2007, the bankruptcy court issued its memorandum decision and entered an order denying confirmation of the plan without prejudice.

The debtor timely moved for leave to appeal the bankruptcy court's interlocutory order. We granted leave to appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether, in determining projected disposable income for purposes of chapter 13 plan confirmation, the debtor can deduct a vehicle ownership expense pursuant to § 707(b)(2)(A)(ii)(I), notwithstanding that the debtor owns the vehicle free and clear of any liens or encumbrances.

## IV. STANDARDS OF REVIEW

 We review de novo a bankruptcy court's conclusions of law. *Nichols v. Birdsell*, 491 F.3d 987, 989 (9th Cir.2007). We review de novo issues of statutory construction, including a bankruptcy court's interpretation of the Bankruptcy

Code. *Towers v. United States (In re Pacific–Atlantic Trading Co.)*, 64 F.3d 1292, 1297 (9th Cir.1995); *Trejos v. VW Credit, Inc. (In re Trejos)*, 374 B.R. 210, 214 (9th Cir. BAP 2007).

## V. DISCUSSION

### A. *Statutory Context*

As observed by nearly all of the courts addressing this issue, there is a significant split in authority. We are asked in this appeal to cast our lot with one side or the other. Before we do, we first must set out the statutory context.

Under § 1325(b)(1)(B), if an unsecured creditor objects to confirmation of a chapter 13 plan which does not provide for payment of all allowed unsecured claims in full, the court may not confirm the plan unless the plan provides that all of the debtor's projected disposable income received during the applicable commitment period will be applied to pay unsecured creditors. Under § 1325(b)(2)-(3), for purposes of calculating disposable income, if the debtor's current monthly income (multiplied by twelve) is above the median income for households of like size in the forum state, then the debtor's reasonably necessary expenses are those allowed under § 707(b)(2)(A) and (B).

Section 707(b)(2)(A)(ii)(I) provides, in relevant part:

> The debtor's monthly expenses shall be the debtor's *applicable monthly expense amounts specified under the National Standards and Local Standards*, and the debtor's *actual monthly expenses for the categories specified as Other Necessary Expenses* issued by the Internal Revenue Service for the area in which

6. $210.55 in disposable income plus $471, the amount of the vehicle ownership expense deduction to which MBNA objected.

7. In *Slusher,* the bankruptcy court held that, based on the definitions and procedures set

out in the Manual, the debtor could deduct a vehicle ownership expense only if he currently made a lease or loan payment on the vehicle. 359 B.R. at 305–10.

the debtor resides, *as in effect on the date of the order for relief* .... (emphasis added).

The Local Standards, originally compiled by the IRS, consist of allowances in specific amounts for certain expenses within two general categories, "Housing and Utilities" and "Transportation."[8] The category, "Transportation," is broken down further into two subcategories, "Operating Costs and Public Transportation Costs" and "Ownership Costs."

Both subcategories set out specific amounts of expenses allowable to the debtor, depending on the region where the debtor resides and/or the number of cars the debtor possesses. Neither subcategory, as set forth on the United States Trustee's website, includes an explanation or a definition of "ownership costs" or "operating costs and public transportation costs."

Other Necessary Expenses,[9] as identified by the IRS, include charitable contri-

butions and repayment of student loans. Form B22C enumerates some, but not all, of the expenses identified by the IRS in the Manual.[10]

### B. Summary of the Existing Case Law

Most courts on either side of the split base their respective positions on a plain meaning interpretation of § 707(b)(2)(A)(ii)(I). *See In re Sawdy*, 362 B.R. 898, 903 (Bankr.E.D.Wis.2007); *In re Armstrong*, 370 B.R. 323, 327 (Bankr. E.D.Wash.2007). The meaning of the phrase, "the debtor's applicable monthly expense amounts specified under the Local Standards," is the point of division between the courts that so far have addressed this issue.[11]

#### 1. Courts allowing the vehicle ownership expense deduction

The courts allowing the deduction draw a sharp distinction between the meaning of

---

**8.** The Office of the United States Trustee provides the National Standards and Local Standards on its website, http://www.usdoj.gov/ust/eo/bapcpa/20051017/meanstesting.htm.

**9.** Section § 707(b)(2)(A)(ii)(I) mentions disability insurance, health savings account expenses, and "reasonably necessary" health insurance as Other Necessary Expenses. Form B22C enumerates the following as Other Necessary Expenses: taxes, mandatory payroll deductions, life insurance, court-ordered payments, child care, health care, telecommunication services, and education for employment or for a physically or mentally challenged child. The Manual further lists accounting and legal fees, and charitable contributions as Other Necessary Expenses.

**10.** The IRS provides its Manual at its website, http://www.irs.gov/irm/index.html. Part 5, Chapter 15, Section 1.7, Subsection 4.B of the Manual provides:

> Transportation–The transportation standards consist of nationwide figures for loan or lease payments referred to as ownership cost, and additional amounts for operating costs broken down by Census Region and

Metropolitan Statistical Area. Operating costs were derived from BLS [Bureau of Labor Statistics] data. If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. If a taxpayer has no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense. Under ownership costs, separate caps are provided for the first car and second car. If the taxpayer does not own a car a standard public transportation amount is allowed.

**11.** Although the courts are split as to whether a debtor can or cannot take the deduction, courts within each line of authority proffer their own distinct rationales or nuances on the prevailing rationales. *See Sawdy*, 362 B.R. at 903–13 (identifying six different rationales advanced by the courts to allow or disallow the deduction). At this time, based on our research, there are over fifty decisions discussing this issue, many of which set forth variations on the prevailing rationales. We mention here only a number of samples of the most typical and the most persuasive.

the words "applicable" and "actual." For these courts, "applicable" is not synonymous with "actual." *See, e.g., In re Farrar–Johnson,* 353 B.R. 224, 230–31 (Bankr. N.D.Ill.2006); *In re Fowler,* 349 B.R. 414, 418 (Bankr.D.Del.2006); *In re Demonica,* 345 B.R. 895, 902 (Bankr.N.D.Ill.2006); *In re Enright,* No. 06–10747, 2007 WL 748432 at *5 (Bankr.M.D.N.C. March 6, 2007). They reason that "applicable" and "actual" must each have its own distinct meaning because each term, used in the same sentence, modifies a particular expense category. *Enright,* 2007 WL 748432 at *5.

These courts infer that the use of these two terms "indicates Congressional intent to *distinguish* between the two classes of expenses." *In re Swan,* 368 B.R. 12, 18 (Bankr.N.D.Cal.2007) (emphasis added). *Accord In re Chamberlain,* 369 B.R. 519, 524–25 (Bankr.D.Ariz.2007); *In re Billie,* 367 B.R. 586, 591 (Bankr.N.D.Ohio 2007); *In re McIvor,* No. 06–42566, 2006 WL 3949172 at *4 (Bankr.E.D.Mich. Nov.15, 2006); *In re Wilson,* 356 B.R. 114, 119 (Bankr.D.Del.2006); *Farrar–Johnson,* 353 B.R. at 230. That is, by using two different terms, Congress intended to "achieve two different results." *Chamberlain,* 369 B.R. at 525; *Enright,* 2007 WL 748432 at *5.

The court in *Chamberlain* states its rationale for interpreting the term "applicable" as follows: "[A]pplicable is an adjective that modifies the 'amounts specified' in the Standards. It does not modify 'debtor's monthly expenses,' which appears at the beginning of § 707(b)(2)(A)(ii)(I)." 369 B.R. at 524. *See also In re Haley,* 354 B.R. 340, 344 (Bankr.D.N.H.2006) ("[I]n section 707(b)(2)(A)(ii)(I), the term 'applicable' modifies the phrase 'monthly expense amounts specified under the ... Local Standards.' ").

Accordingly, for these courts, "applicable" references the Local Standards that apply to the debtor as determined by his or her place of residence. *See Chamberlain,* 369 B.R. at 524; *In re Briscoe,* 374 B.R. 1, 10 (Bankr.D.D.C.2007); *Enright,* 2007 WL 748432 at *6; *Haley,* 354 B.R. at 344; *McIvor,* 2006 WL 3949172 at *4; *In re Prince,* No. 06–10328C–7G, 2006 WL 3501281 at *2 (Bankr.M.D.N.C. Nov.30, 2006); *Wilson,* 356 B.R. at 119; *Farrar–Johnson,* 353 B.R. at 230–31. Put another way, whether a monthly expense amount as specified under the Local Standards is applicable to the debtor depends on the number of vehicles he or she owns or leases and on where he or she resides. *Haley,* 354 B.R. at 343–44.

Some courts refer to Form B22C as additional evidence that the debtor can take the vehicle ownership expense deduction, regardless of whether he or she makes a lease or loan payment on a vehicle. These courts reason that, on Form B22C, "[i]f the form is filled out correctly the debtor is always allowed at least the standard ownership cost regardless of the existence of or the amount of an actual automobile expense payment."[12] *In re Wilson,* 373 B.R. 638, 642 (Bankr. W.D.Ark.2007). *Accord Crews,* 2007 WL 626041 at *4; *Prince,* 2006 WL 3501281 at *3; *In re Demonica,* 345 B.R. at 902; *In re Naslund,* 359 B.R. 781, 792 (Bankr.

---

**12.** According to the court in *Crews,* the advisory committee note to Form B22C indicates that the ownership/lease component does not require the debtor to make lease or loan payments on the vehicle. *In re Crews,* No. 06–13117, 2007 WL 626041 at *4 (Bankr. N.D.Ohio Feb.23, 2007). The advisory committee note states: "The ownership/lease component ... may involve debt payment." The court concluded that the use of the word "may" implies that debt payment on the vehicle is not a prerequisite in asserting the deduction.

D.Mont.2006).[13] Thus, § 707(b)(2)(A)(ii)(I) provides a fixed expense deduction in terms of "Ownership Costs," not a limitation.

## 2. Courts disallowing the vehicle ownership expense deduction

Courts on the other side of the issue read "applicable" less restrictively. They read "applicable" to mean that the debtor can deduct a vehicle ownership expense under the Local Standards *only if* he or she has such an expense in the first place. *Neary v. Ross–Tousey (In re Ross–Tousey),* 368 B.R. 762, 765 (E.D.Wis.2007). *See, e.g., Fokkena v. Hartwick,* 373 B.R. 645, 650 (D.Minn.2007) (citing *Ross–Tousey,* 368 B.R. at 764–65); *In re Garcia,* No. 07–00268, 2007 WL 2692232 at *4 (Bankr. D.Ariz. Sept. 11, 2007); *In re Canales,* 377 B.R. 658, 665–66 (Bankr.C.D.Cal.2007); *In re Brown,* 376 B.R. 601, 606 (Bankr. S.D.Tex.2007); *In re Ceasar,* 364 B.R. 257, 262 (Bankr.W.D.La.2007); *In re Howell,* 366 B.R. 153, 157 (Bankr.D.Kan.2007); *In re Carlin,* 348 B.R. 795, 798 (Bankr.D.Or. 2006); *In re McGuire,* 342 B.R. 608, 613 (Bankr.W.D.Mo.2006). Under this reading, though the debtor's "actual" expense does not necessarily control the amount of the deduction, "the debtor must still have *some* expense in the first place before the Standard amount becomes 'applicable.'" *Ross–Tousey,* 368 B.R. at 765 (emphasis in original).

According to these courts, this reading does not equate "actual" with "applicable."

"Applicable" describes "something that is 'capable or suitable for being applied'"—that is, appropriate. *Garcia,* 2007 WL 2692232 at *4 (quoting Merriam–Webster's Online Dictionary, www.wm.com/dictionary). *See also Howell,* 366 B.R. at 157 (reasoning that, by employing the word "applicable," which the dictionary defines as "capable of being applied" or "readily applicable or practical," the drafters of the statute suggest that the standards must be interpreted in the context of the Manual). If the debtor has no lease or loan payments to report on Form B22C, then there is no deduction under the Local Standard. *Garcia,* 2007 WL 2692232 at *4. *See also Ross–Tousey,* 368 B.R. at 765.

These courts believe that construing the statute in this manner "gives meaning to the distinction between 'applicable' and 'actual'" without necessarily concluding that "applicable" means an actual expense up to the Local Standards cap. *Id.* If interpreted to allow the debtor the full amount of the deduction, regardless of whether the debtor in fact makes loan or lease payments, then the term "applicable" would be superfluous. *In re Wiggs,* No. 06–70203, 2006 WL 2246432 at *2 (Bankr. N.D.Ill. Aug.4, 2006). If so interpreted, it simply is not necessary to the sense of § 707(b)(2)(A)(ii)(I).

In further support of this rationale, some of these courts consider the Manual as an aid in interpreting the language of § 707(b)(2)(A)(ii)(I).[14] *See Slusher,* 359

---

**13.** Of course, national or local forms are only valid to the extent that they conform to the substantive provisions of the Bankruptcy Code. It is axiomatic that guidelines in a form cannot stand as independent authority in opposition to the Bankruptcy Code itself. *See, e.g., Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 782 (9th Cir. BAP 2005).

**14.** These courts justify looking to the Manual for guidance on the ground that reference to

the Manual is necessary to place the standards found within § 707(b)(2)(A)(ii)(I) in context. *Fokkena,* 373 B.R. at 650–51 (citing *Slusher,* 359 B.R. at 309); *Howell,* 366 B.R. at 157. *See also In re Hardacre,* 338 B.R. 718, 726 (Bankr.N.D.Tex.2006) ("[I]t is instructive to refer to publications of [the IRS] for guidance as to the types of 'debt payments' that can reduce allowances under the Local Standards."). In addition, the legislative history specifically references the Manual. H.R. Rep.

B.R. at 309; *Talmadge*, 371 B.R. at 100–01; *Oliver*, 350 B.R. at 301 n. 4; *Hardacre*, 338 B.R. at 726; *Carlin*, 348 B.R. at 797. The Manual provides that the Transportation Standard is the maximum a taxpayer may claim—it fixes the deduction at the allowance under the Local Standard or the amount actually paid, whichever is less.[15] The Manual further specifies that the Transportation Standards "consist of nationwide figures for *loan or lease payments referred to as ownership cost*, and additional amounts for operating costs broken down by Census Region and Metropolitan Statistical Area."[16] (emphasis added). It also states that if the taxpayer has no car payment, only the operating cost portion of the Transportation Standard is used to calculate the allowable transportation expense.[17] As the Manual itself prohibits the debtor from asserting the vehicle ownership expense deduction when he or she has no loan or lease payments on a vehicle, these courts reason that § 707(b)(2)(A)(ii)(I) does not allow such a deduction either.[18]

## C. The Debtor Cannot Take a Deduction Under the Plain Meaning of § 707(b)(2)(A)(ii)(I)

■ The debtor here urges us to adopt the rationale of those courts allowing the vehicle ownership expense to debtors who make no lease or loan payments on a vehicle. After much consideration, we find the rationale of the courts *disallowing* the deduction more persuasive.

■ When confronted with questions of statutory construction, we begin our analysis with the language of the statute itself, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), mindful that Congress " 'says in a statute what it means and

---

109–31(I), at 13–14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 99–100; *Stapleton v. Talmadge (In re Talmadge)*, 371 B.R. 96, 100 (Bankr.M.D.Pa.2007); *In re Bennett*, 371 B.R. 440, 445 (Bankr.C.D.Cal.2007); *In re Oliver*, 350 B.R. 294, 301 n. 4 (Bankr.W.D.Tex.2006).

Another court argues that nothing in the statutory language or the legislative history prohibits a court from referring to the Manual for guidance. *Ceasar*, 364 B.R. at 262. Other courts contend that reference to the Manual is acceptable as § 707(b)(2)(A)(ii)(I) incorporates the Local Standards. *Brown*, 376 B.R. at 606–07; *Carlin*, 348 B.R. at 797.

15. Part 5, Chapter 15, Section 1.7, Subsection 4 of the Manual specifically provides that, with respect to the categories, "Housing and Utilities" and "Transportation," under the Local Standards, a taxpayer "will be allowed the local standard or the amount actually paid, whichever is less."

16. Part 5, Chapter 15, Section 1.7, Subsection 4.B of the Manual. Also, Part 5, Chapter 15, Section 1.9, Subsection 1.B of the Manual defines transportation expenses as "[v]ehicle insurance, *vehicle payment (lease or purchase)*, maintenance, fuel, state and local registra-

tion, required inspection, parking fees, tolls, driver's license, [and] public transportation." (emphasis added).

17. The note under Part 5, Chapter 15, Section 1.9, Subsection 1.B of the Manual states: "The taxpayer is *only allowed* the operating cost or the cost of transportation." (emphasis added).

18. We note that Congress looked to the Manual for the definitions of certain terms. For example, Congress quoted the Manual for the definition of "necessary expenses." H.R.Rep. No. 109–31, at 14 n. 63 (2005), *reprinted in* Bankruptcy Reform: Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (2005). Congress also cited to the Manual in describing the Local Standards. *Id.*

We agree with the court in *Canales*, however, that although the Manual is "helpful in some contexts, [it does] not give meaning to the statute itself." 377 B.R. at 664. As we explain below, the statutory language, plainly read, does not allow the debtor to deduct a vehicle ownership expense when he or she has no loan or lease payments.

means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (citation omitted). When the statute's language is plain, we enforce it according to its terms, unless such a reading would render it absurd. *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford*, 530 U.S. at 6, 120 S.Ct. 1942).

■ To determine whether the statutory language is plain or ambiguous, we refer to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). When a statute does not define a term, we construe that term according to its ordinary, contemporary, common meaning. *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2004). We may resort to a dictionary to determine the plain meaning of a term undefined by a statute. *Id.* We only refer to the statute's legislative history if an ambiguity exists or an absurd construction results. *Id.*

■ We note, however, that statutory construction is a "holistic endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The overall statutory scheme often clarifies a seemingly ambiguous provision because "only one of the permissible meanings [of that provision] produces a substantive effect that is compatible with the rest of the law." *Id. See also Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (citation omitted).

Congress has deemed the expense of owning a car to be a basic expense that debtors can deduct in calculating what they can afford to pay to their creditors. However, in making that calculation, what is important is the payments that debtors actually make, not how many cars they own, because the payments that debtors make are what actually affect their ability to make payments to their creditors.

> The statute is only concerned about protecting the debtor's ability to continue owning a car, and if the debtor *already* owns the car, the debtor is adequately protected.... When the debtor has no monthly ownership expenses, it makes no sense to deduct an ownership expense to shield it from creditors.

*Ross–Tousey*, 368 B.R. at 766 (emphasis in original).

Section 707(b)(2)(A)(ii)(I) provides, in relevant part, that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under ... the Local Standards." As set forth in the statute, the adjective "applicable" modifies the meaning of the noun "monthly expense amounts;" it indicates that the deduction of the monthly expense amount specified under the Local Standard for the expense becomes relevant to the debtor (i.e., appropriate or applicable to the debtor) when he or she in fact has such an expense.

The ordinary, common meaning of "applicable" further impels us to this conclusion. "Applicable," in its ordinary sense, means "capable of or suitable for being applied." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 60 (11th ed.2005). Given the ordinary sense of the term "applicable," how is the vehicle ownership expense al-

lowance *capable of being applied* to the debtor if he does not make any lease or loan payments on the vehicle? In other words, how can the debtor assert a deduction for an expense he does not have? If we granted the debtor such an allowance, we would be reading "applicable" right out of the Bankruptcy Code. *See also Ross–Tousey,* 368 B.R. at 765.

The debtor also argues for allowance of the vehicle ownership expense deduction on equitable grounds. He claims that, due to the age of the car, the likelihood of major repairs and the costs of such repairs will increase. He further contends that the allowable operating costs under the Local Standards do not take into account the costs of major repairs.

> However, as the court in *Carlin* noted: Numerous safeguards are in place to protect both debtors and creditors. Debtors who own old or high mileage cars "free and clear," are entitled to an extra $200 per month operating expense. Also, a "free and clear" owner is not "stuck" with the vehicle operating expenses allowed under the IRS Standards. Section 707(b)(2)(B) is also available for "above the median" Chapter 13 debtors. Section 707(b)(2)(B), allows additional expenses based on "special circumstances."

348 B.R. at 798 (citations omitted). We agree with the court in *Carlin* and conclude that the debtor's appeal to equity is unavailing.

■ Further, our interpretation of § 707(b)(2)(A)(ii)(I) has a substantive effect that is consistent with the underlying goals of BAPCPA. *Cf. Timbers,* 484 U.S.

at 371, 108 S.Ct. 626. To interpret the statute otherwise is counterintuitive to one of the main objectives of BAPCPA: to ensure that debtors repay as much of their debt as reasonably possible. *Howell,* 366 B.R. at 157; *Bennett,* 371 B.R. at 445 (citing H.R.Rep. No. 109–31, pt. 1 at 2 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89); *Ceasar,* 364 B.R. at 263 (citing 151 CONG. REC. S2470 (March 10, 2005)); *Hardacre,* 338 B.R. at 725 (citing same).[19] *But see Swan,* 368 B.R. at 20–21 (concluding that allowance of the standardized deduction is consistent with the intent of BAPCPA to limit the bankruptcy court's discretion to examine the debtor's lifestyle in determining his or her disposable income). When viewed within the larger context of BAPCPA, we believe the statute can only be interpreted to "apply" expense standards in cases where debtors in fact pay such expenses.

## VI. CONCLUSION

The bankruptcy court determined that, by deducting a vehicle ownership expense under § 707(b)(2)(A)(ii)(I) for a car that he owned free of encumbrances, the debtor did not devote all of his projected disposable income to fund the plan. The bankruptcy court thus denied plan confirmation pursuant to § 1325(b)(1)(B).

We agree with the courts that hold that a debtor has no right to deduct a vehicle ownership expense when he or she makes no lease or loan payments on the vehicle. Under § 707(b)(2)(A)(ii)(I), the deduction of a vehicle ownership expense only applies to the debtor when he or she has that

---

**19.** Even the court in *Wilson,* which ultimately allowed the debtor the vehicle ownership expense deduction, admitted:

> The irony is palpable that Congress'[s] efforts to eliminate perceived abuses in the bankruptcy system by forcing debtors into

Chapter 13 also diminishes payments to unsecured creditors by mandating the use of fictitious amounts of income and expenses.

373 B.R. at 644.

particular expense.[20] Therefore, we AF-FIRM.[21]

20. The issue of whether, if the debtor makes loan or lease payments on a vehicle, the debtor can take the full deduction under the Local Standards, whatever the actual amount of the vehicle expense, is not before us in this appeal. Some courts have concluded that the debtor can take the full standard deduction, even though he or she has an actual expense lower than the standard deduction. *See, e.g., In re Barrett*, 371 B.R. 855, 859 (Bankr. S.D.Ill.2007) (allowing the debtor to assert the full vehicle ownership expense deduction of $471 under the Local Standard, even though she had an average monthly car payment of $75.13); *Naslund*, 359 B.R. at 791, 793 (allowing the debtors to assert the full vehicle ownership expense deduction of $471 when their actual monthly payment was $133 and the average monthly payment over 60 months was $85.15). *See also, e.g., Swan*, 368 B.R. at 21–22 (allowing the debtor to assert the full housing expense deduction of $1,644 under the Local Standard, even though her actual monthly rent payment was $800). Other courts have taken a contrary position. *See, e.g., In re Rezentes*, 368 B.R. 55, 56, 62 (Bankr.D.Hawaii 2007) (ruling that the debtors can only deduct their actual monthly housing expense of $300, even though the full housing expense deduction under the Local Standard was $2,000).

21. At oral argument, counsel for both parties agreed with our suggestion that we certify our disposition to the court of appeals for possible review of a non-final order. Concurrently with the issuance of this opinion, we are issuing that certification.