Scott W. COFFIN, Debtor.

Scott W. Coffin, Appellant,

v.

eCast Settlement Corporation and
Peter C. Fessenden, Chapter
13 Trustee, Appellees.

BAP No. EP 08–090.

Bankruptcy No. 07–20955–JBH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Sept. 15, 2010.

■■■■■■■■■■■■■■■■

J. Scott Logan, Esq., Biddeford, ME, on brief for Appellant.

William Andrew McNeal, Esq., Malvern, PA, on brief for Appellee eCast Settlement Corporation.

Peter C. Fessenden, Esq., on brief for Appellee Chapter 13 Trustee.

Ramona D. Elliott, Esq., Miami, FL, P. Matthew Sutko, Esq., Washington, DC, and David I. Gold, Esq., on brief for the Executive Office for United States Trustees, Department of Justice, as Amicus Curiae.

Before LAMOUTTE, BOROFF, and ROSENTHAL,[1] United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

Scott Coffin (the "Debtor") appeals from an order, dated November 18, 2008, issued by the United States Bankruptcy Court for the District of Maine (the "Order")[2] denying confirmation of his chapter 13 plan because it included a deduction for an ownership expense on a vehicle which was neither leased nor encumbered. The bankruptcy court concluded that, under § 707(b)(2)(A)(ii)(I),[3] the vehicle ownership expense deduction is not "applicable" to above-median debtors who have no loan or lease payments, and that the Debtor had therefore failed to apply all of his disposable income to make payments to unsecured creditors as required by § 1325(b)(1)(B).

We do not say that the bankruptcy court's well-reasoned decision failed to reach a sensible conclusion. However, the statute, as drafted, and in light of its underlying policies, mandates a different result. Accordingly, we conclude that the mandatory language of § 707(b)(2)(A)(ii)(I), read in the context of its statutory scheme, purposes, and policies, provides that above-median debtors "shall" enter the Internal Revenue Service (the "IRS") Local Standards (rather than their actual expenses) onto their Form B22C[4] in determining their projected net

---

1. The Honorable Joel B. Rosenthal, Bankruptcy Judge for the District of Massachusetts, retired subsequent to this matter being taken under submission. The remaining two panel judges are in agreement and will act as a quorum in resolving the appeal. *See* Fed. R. Bankr.P. 8018(b); 28 U.S.C. § 46(d); *United States v. Kayne*, 90 F.3d 7 (1st Cir.1996) (judgment issued by two panel members after third judge recused himself); *Chase v. Harris (In re Harris)*, 385 B.R. 802 (1st Cir. BAP 2008) (judgment issued by two panel members after third judge resigned;) *Moore v. District Attorney of Love County (In re Moore)*, 302 B.R. 112 (10th Cir. BAP 2003) (judgment issued by two panel members after third judge passed away).

2. The Debtor did not include a copy of the Order in his appendix, as required by Fed. R. Bankr.P. 8009(b)(3). Given that the Debtor did include the memorandum of decision, in which the bankruptcy court articulated the basis for its decision, the appellate record provides a sufficient basis for the Panel to review the Order. *See Gagne v. Fessenden (In re Gagne)*, 394 B.R. 219, 225 (1st Cir. BAP 2008) (holding that failure to provide hearing transcript is not fatal to appeal where appellate record provides sufficient basis on which to review decision).

3. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 37 ("BAPCPA").

4. Form B22C is the chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

disposable income. For this reason, we **REVERSE.**

## BACKGROUND

The relevant facts are not in dispute.

The Debtor has current monthly income [5] which is above the median for the District of Maine. He owns three motor vehicles outright: a 2002 Chevrolet Camaro, a 1973 Cadillac El Dorado, and a 1987 Chevrolet plow truck. On his amended Schedule I, the Debtor disclosed total monthly gross income of $8,766.73, and total net monthly take home pay of $6,557.03. On his amended Schedule J, he disclosed monthly living expenses totaling $5,859.93. On his amended [6] Form B22C, the Debtor calculated deductions from his income totaling $8,692.86, leaving $73.87 in projected monthly disposable income. As part of those deductions, the Debtor claimed ownership expenses of $478.00 a month for each of two vehicles, for a total of $956.00 per month, but listed no monthly debt payments on those vehicles.

The Debtor's Second Amended Plan, in which he proposed a 16 percent distribution to general unsecured creditors, "depend[ed] on his entitlement to the two $478 deductions." ECast Settlement Corporation ("eCast"), an unsecured creditor in the Debtor's bankruptcy, objected to confirmation of the Second Amended Plan on the grounds that the Debtor had understated his projected disposable income by deducting ownership expenses for two vehicles that were neither leased nor encumbered. The Debtor filed a brief in response to eCast's objection, in which he set forth multiple arguments as to why he should be allowed to claim the vehicle own-

ership expense deduction. The chapter 13 trustee disagreed; in his brief, he acknowledged that there was no controlling authority in this circuit, but argued that the applicable statutory scheme does not allow the Debtor to claim the ownership expenses.

The bankruptcy court held a hearing and took the matter under advisement. The court subsequently issued the Order, accompanied by a memorandum of decision in which it concluded that the Bankruptcy Code does not permit an above-median chapter 13 debtor to deduct a vehicle ownership expense that he is not incurring. The bankruptcy court examined the legislative intent behind BAPCPA and the language of § 1325(b)(3), which governs the determination of "reasonably necessary expenses" for debtors with income above the median for their jurisdiction. The court reasoned that, while the language of § 1325(b)(3) divulged no plain meaning, "[t]he determinative standard for Chapter 13 debtors' expenses is reasonableness and necessity," and that a "nonexpenditure" such as the Debtor sought to apply did not qualify. Additionally, the court explained that it had rejected a vehicle's declining worth as an ownership expense because chapter 13 budgeting had traditionally taken no account of such "costs" and "BAPCPA did not alter confirmation standards so fundamentally (and so adversely to creditors' interests) that they must now be taken into account." Accordingly, the court concluded that because the Debtor was not incurring out-of-pocket ownership expenses, they could not fairly be "projected" into his plan. This appeal

---

**5.** The term "current monthly income" is defined in § 101(10A); its various components are neither relevant nor in dispute. The Debtor's annualized current monthly income for purposes of § 1325(b)(4) is $105,200.76.

The applicable median family income in the District of Maine is $38,090.00.

**6.** In its objection to confirmation, eCast refers to it as the amended Form B22C.

followed.[7]

## JURISDICTION

 A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted).

 Here, the Panel ordered the Debtor to show cause why this appeal should not be dismissed as interlocutory because an order denying confirmation of a chapter 13 plan is not a final order (as the debtors are free to propose an alternative plan), and the Order did not appear to satisfy any of the exceptions to the final order rule. The Debtor filed a response in which he argued that the Order is a final, appealable order, or alternatively that the Order satisfies each of the three exceptions to the final order rule. The Panel

determined that the Debtor had shown sufficient cause to preclude dismissal of the appeal, but did not make a final ruling on jurisdiction. We conclude that the Order is interlocutory, *see Hamilton v. Wells Fargo Bank, N.A. (In re Hamilton),* 401 B.R. 539 (1st Cir. BAP 2009); *Watson v. Boyajian (In re Watson),* 309 B.R. 652, 659 (1st Cir. BAP 2004), *aff'd,* 403 F.3d 1 (1st Cir.2005); *Ransom v. MBNA America Bank, N.A. (In re Ransom),* 380 B.R. 799, 801 (9th Cir. BAP 2007), *aff'd,* 577 F.3d 1026 (9th Cir.2009), *cert. granted,* —— U.S. ——, 130 S.Ct. 2097, 176 L.Ed.2d 721 (2010), but that the Order satisfies the § 158 exception to the final order rule.[8] *See In re Bank of New England,* 218 B.R. at 652–54.

## STANDARD OF REVIEW

 The Panel generally reviews findings of fact for clear error and conclusions of law *de novo. See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719 n. 8 (1st Cir.1994). We review questions of statutory interpretation *de novo. United States v. Tobin,*

---

7. We stayed the appeal pending the outcome of *Boyajian v. Burbank (In re Burbank),* Nos. 09–1776, 09–1777 (1st Cir. July 6, 2010), which the First Circuit took on direct appeal from the United States Bankruptcy Court for the District of Rhode Island. The First Circuit then stayed *Burbank* pending the Supreme Court's decision in *Hamilton v. Lanning (In re Lanning),* —— U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). After the Supreme Court issued its decision in *Lanning,* and pursuant to the appellant's request, the First Circuit remanded *Burbank* back to the bankruptcy court for reconsideration in light of *Lanning.*

8. Application of § 158(a)(3) review of interlocutory orders mirrors application of § 1292(b). *Bank of New England,* 218 B.R. at 652 (citations omitted). "Section 158 provides no express criteria to guide our discre-

tion, but most courts utilize the same standards as govern the propriety of district courts' certification of interlocutory appeals to the circuit courts under § 1292(b)." *Id.* at 649 (citations omitted). "Section 1292(b) permits appellate review of 'certain interlocutory orders, decrees and judgments ... to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties.'" *Id.* at 652 n. 17. "To ascertain whether we should exercise our discretion ... we will consider whether (1) the 'order involves a controlling question of law' (2) 'as to which there is substantial ground for difference of opinion,' and (3) whether 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id.* at 652. We find all three elements present here.

552 F.3d 29, 32 (1st Cir.2009). The issue before us is one of statutory interpretation.

## DISCUSSION

### I. BAPCPA and Statutory Construction

■■■ Traditionally, questions of statutory construction begin with the plain language of the statute; courts consider the language in the context of the statutory scheme, avoiding statutory constructions which create results that are "senseless" or contrary to congressional intent. *See Hamilton v. Lanning (In re Lanning)*, —— U.S. ——, —— – ——, —— – ——, 130 S.Ct. 2464, 2468–69, 2475–76, 177 L.Ed.2d 23 (2010); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *but see Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).[9] "We presume that Congress intended all words and provisions contained within a statute to have meaning and effect, and we will not readily adopt any construction that renders any such words or phrases meaningless, redundant, or superfluous." *United States v. Ahlers*, 305 F.3d 54, 58 (1st Cir.2002). A court should look beyond the language of the statute for interpretive guidance only where the language of the statute is ambiguous; a statute is ambiguous if it allows for more than one reasonable interpretation. *General Motors Corp. v. Darling's Auto Mall*, 444 F.3d 98, 108 (1st Cir.2006).

It is generally accepted that many provisions of BAPCPA are unclear, making it difficult for courts to discern the congressional intent. *See, e.g.,* Jean Braucher, *A Guide to Interpretation of the 2005 Bankruptcy Law*, 16 Am. Bankr. Inst. L. Rev. 349, 349 (Winter 2008); Hon. Thomas F. Waldron and Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective After Two Years of BAPCPA*, 81 Am. Bankr. L.J. 195, 197 (Summer 2007). Further complicating matters, different portions of BAPCPA are driven by different congressional goals, namely the sometimes competing goals of "Bankruptcy Abuse Prevention" and "Consumer Protection." As such, the canons of statutory interpretation "do not necessarily compel consistent conclusions" with respect to different sections of BAPCPA.[10] Waldron & Berman, *supra*, at 199.

■■■ Thus, a provision of BAPCPA may be unclear even if it does not appear on its face to be ambiguous. *See id.;* Braucher, *supra*, at 349; *see also General Motors Corp. v. Darling's Auto Mall*, 444 F.3d at 108 (explaining that a determination of statutory ambiguity is not limited to the four corners of a statute, but includes instances where the statute in question allows for more than one reasonable interpretation). Therefore, when interpreting BAPCPA, courts should review a range of statutory principles before settling on a final interpretation, *see* Waldron & Berman, *supra*, at 228, and "check" the apparent plain meaning against congressional purpose and the policy effects on the bank-

---

9. In *Marrama*, the Supreme Court began its opinion with a statement of the purpose of the Bankruptcy Code rather than the language of the statutory provision in question. There, the Court held that a debtor had forfeited his right to proceed under chapter 13 due to prepetition bad faith conduct. *Marrama*, 549 U.S. at 370, 127 S.Ct. 1105.

10. For instance, courts sometimes interpret the word "and" to mean "or," *see* Waldron & Berman, *supra*, at 200 (citing *In re TCR of Denver, LLC*, 338 B.R. 494, 499 (Bankr. D.Colo.2006) (applying § 1112(b)(4)(O)), and other times interpret the word "and" to mean "and." *See id.* (citing *In re Abdul Muhaimin*, 343 B.R. 159, 167 n. 5 (Bankr.D.Md.2006) (applying § 362(d)(4)).

ruptcy system. Braucher, *supra*, at 357. In particular, courts should examine the language, purposes, and policies of BAPC-PA, and attempt to reconcile all three, "making sense of the law to the extent possible." *Id.* at 351.

The provision of BAPCPA at issue in this appeal is no exception; it has generated much conflicting case law as well as discussion of differing theories of statutory construction.[11] *See, e.g., id.; In re Young*, 392 B.R. 6, 22 (Bankr.D.Mass.2008) (explaining that it was "loathe to characterize [ ] § 707(b)(2)(A)(ii)(I) as clear or unambiguous in light of the vast amount of conflicting authority"); *In re Mati*, 390 B.R. 11, 21 (Bankr.D.Mass.2008) (noting that courts are about evenly split as to whether a vehicle ownership deduction is permissible where the debtor has no car payment); *In re Swan*, 368 B.R. 12, 17 (Bankr.N.D.Cal.2007) (noting that the issue has been thoroughly discussed but no discernable majority view has emerged).

In our view, § 1325(b) is an example of a provision that is caught between the tension of BAPCPA's two goals: bankruptcy abuse prevention and consumer protection. Thus, under different facts that implicated a different subsection of § 1325(b), this Panel concluded that the term "projected disposable income" is forward looking and that courts should adjust a below-median debtor's "current monthly income" (with further adjustments not relevant here) when not consistent with the debtor's actual circumstances. *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 312 (1st Cir. BAP 2007). In the context of the instant appeal, however, we conclude for the reasons discussed below that the statutory structure requires that the vehicle ownership expense be determined strictly based on the National Standards (rather than on the Debtor's actual expense). This difference in approach is dictated by the statute itself, namely that § 1325(b)(3) mandates how expenses are to be calculated for above-median income debtors but not for below-median income debtors.

## II. The Statute: Sections 1325(b) and 707(b)

■■■ The issue before us hinges on how to calculate the amounts that an above-median income chapter 13 debtor must pay unsecured creditors under BAPCPA. The calculation has two basic components: income and expenses. In the real world, one would intuitively subtract expenses from income to obtain that number. However, in bankruptcy after BAPCPA, the expense calculation for above-median income debtors is subject, with exceptions not here relevant, to a variety of nondiscretionary limitations.

Under § 1325(b)(1)(B),[12] if the trustee or an unsecured creditor objects to confir-

---

11. For an excellent exposition of the line of reasoning adopted by many of the courts that have concluded a debtor may not claim the vehicle ownership deduction where there is no loan or lease payment on the vehicle, *see In re Ransom*, 380 B.R. at 805–808.

12. Section 1325(b) provides in pertinent part as follows:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor

mation of the plan, the bankruptcy court may not confirm the plan unless the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[13] 11 U.S.C. § 1325(b)(1). The Code does not define "projected disposable income;"[14] however, "disposable in-

(other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
(ii) for charitable contributions (that meet the definition of 'charitable contribution' under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median income of the applicable State for a family of the same number or fewer individuals; or
(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4.

**13.** The court may also approve the plan if "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim," 11 U.S.C. § 1325(b)(1)(A), but this provision is not at issue here.

**14.** Until recently, interpretation of the income side of projected disposable income was the subject of disagreement between two circuits. *See, e.g., Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir.2008) (adopting forward looking approach); *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir.2008) (adopting mechanical approach). The Supreme Court settled the question, however, when it adopted the forward looking approach in *In re Lanning*. *See In re Lanning*, 130 S.Ct. at 2478. Like the instant case, *In re Lanning* also involved an above-median debtor. The debtor was only above-median due to a one-time buyout from her former employer within six months of filing her petition. Her Schedule I reflected that she was, in fact, below-median. As such, the debtor proposed a plan based on her actual monthly income, and the chapter 13 trustee objected on the grounds that she had not committed all of her projected disposable income to the repayment of creditors. The Supreme Court endorsed the forward looking approach, such that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* Here, however, there has been no "change"; accordingly, the *Lanning* holding does not seem to apply. *Darrohn v. Hildebrand (In re Darrohn)*, 2010 WL 2852251, *5 (6th Cir. Jul.22, 2010) (holding that bankruptcy court erred in failing to consider change in debtors' income and their intent to surrender properties securing mortgages); Dan Press, *Supreme Court decides Hamilton v. Lanning: Projected Disposable Income in Chapter 13 Bankruptcy is not Strictly Mechanical*, Bankruptcy Law Network: Bankruptcy Cases & Legislation, (June 7, 2010) (arguing that the *Lanning* decision "should not result in the IRS-allowed expenses being disregarded," because "a dis-

come" means the debtor's current monthly income minus "amounts reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor" in addition to other items that do not apply in this instance. 11 U.S.C. § 1325(b)(2).

Section 707(b)(2)(A) and (B), the so-called "means test," significantly restricts court discretion as to those expenses which are "amounts reasonably necessary" and accordingly can be deducted in calculating disposable income. 11 U.S.C. § 1325(b)(3); 11 U.S.C. § 707(b)(2); *In re Haley*, 354 B.R. 340, 342 (Bankr.D.N.H.2006). Pursuant to § 707(b)(2)(A)(ii)(I),[15] the above-median income debtor's monthly expenses are fixed as "the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis supplied).

The National and Local Standards are "the Collection of Financial Standards used by the Internal Revenue Service to determine a taxpayer's ability to pay a delinquent tax liability." *In re Fowler*, 349 B.R. 414, 416–17 (Bankr.D.Del.2006). The National Standards include five expense categories: (1) food; (2) housekeeping supplies; (3) apparel and services; (4) personal care products and services; and (5) miscellaneous. *Id.* The National Standards are based on the taxpayer's gross income and family size. *Id.*

The Local Standards provide fixed allowable expenses for (1) housing and utilities, and (2) transportation. *Id.; In re Haley*, 354 B.R. at 342. There are two components to the transportation expense: (1) ownership costs, which are based on the number of cars owned by the taxpayer; and (2) operating costs and public transportation costs, which are based on the number of cars owned by the taxpayer and on the taxpayer's location. *In re Fowler*, 349 B.R. at 416–17. The Local Standards allow ownership expenses of $471.00 for the first car and $332.00 for the second car. *In re Haley*, 354 B.R. at 342.

The fact that Congress specified that debtors are entitled to "actual" monthly expenses with respect to Other Necessary Expenses and "applicable" monthly expense amounts with respect to the National and Local Standards indicates that Congress intended "applicable" to mean something other than "actual." *In re Mati*, 390 B.R. at 23; *In re Swan*, 368 B.R. at 18; *In re Fowler*, 349 B.R. at 418. " 'Applicable' in this context simply means that debtors shall select the appropriate values from the Local Standards table, taking the debtor's locality into account." *In re Young*, 392 B.R. at 22; *see also In re Lanning*, 130 S.Ct. at 2469 (examining context of statutory language).

■■■■ Legislative history indicates that Congress intended for the Local Standards to function as fixed deduction

---

crepancy between the expenses allowed on the 'means test' and the Debtor's actual expenses" is not a "change").

**15.** Section 707(b)(2)(A)(ii)(I) provides in pertinent part:

The debtor's monthly expenses *shall* be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debt-

or's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis supplied).

amounts. *In re Fowler*, 349 B.R. at 418. Congress added § 707(b)(2) to the Bankruptcy Code in 2005 as part of BAPCPA. *In re Burbank*, 401 B.R. 67, 70 (Bankr. D.R.I.2009). In an earlier version of BAPCPA that did not pass, Congress had defined "projected monthly net income" for the means test to require the following calculation of expenses:

> (A) the expense allowances under the applicable National Standards, Local Standards, and Other Necessary Expenses allowance (excluding payments for debts) for the debtor ... in the area in which the debtor resides as determined under *the Internal Revenue Service financial analysis* for expenses in effect as of the date of the order for relief.

*In re Fowler*, 349 B.R. at 418 (quoting H.R. 3150, 105th Congress (1998) (emphasis added by *Fowler* court)). In the enacted version of BAPCPA, Congress replaced the reference to the IRS financial analysis with the "applicable monthly expense amounts specified under the National and Local Standards" language. *Id.* This language change demonstrates that Congress' purpose in referring to the Local Standards was to establish a fixed deduction rather than to make IRS financial analysis binding on bankruptcy courts. *Id.*[16] Indeed, in this respect, the legislative history could not have been clearer: "'The bill

also makes substantial changes to chapter 13 by substituting the IRS expense standards to calculate disposable income.... The formula remains inflexible and divorced from the debtor's actual circumstances.'" *In re Swan*, 368 B.R. at 20 (quoting Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R.Rep. No. 109–31, pt. 1 at 553 (2005)). The purpose behind the means test in general also supports the conclusion that debtors who have no car loan or lease payment should be allowed to take the vehicle ownership deduction. *Hildebrand v. Kimbro (In re Kimbro)*, 389 B.R. 518, 531 (6th Cir. BAP 2008); *In re Fowler*, 349 B.R. at 420. In creating the means test, Congress intended that there be an easily applied formula for determining when bankruptcy courts should presume that a debtor's filing of a chapter 7 petition is abusive, and presumptions are typically created to avoid litigation. *In re Fowler*, 349 B.R. at 420. Thus, Congress intended for the National and Local Standards to serve as a list of standard expenses for all debtors that could be "easily and uniformly applied." *Id.* at 420–21. There is no question but that Congress intended to limit the bankruptcy court's discretion in inquiring into the particulars of a debtor's lifestyle and disposable income. *In re Swan*, 368 B.R. at 20; *see*

---

**16.** In this respect, the fact that the IRS does not allow taxpayers to claim an ownership expense for a vehicle on which the taxpayer is not actually making payments is irrelevant and not binding on bankruptcy courts. *See In re Mati*, 390 B.R. at 21; *In re Haley*, 354 B.R. at 343; *In re Fowler*, 349 B.R. at 418; *see also In re Chamberlain*, 369 B.R. 519, 525 (Bankr. D.Ariz.2007); *In re Swan*, 368 B.R. at 18; *In re Barrett*, 371 B.R. 855, 858–59 (Bankr. S.D.Ill.2007). Section 707(b)(2)(A)(ii)(I) neither references nor incorporates IRS guidelines. *In re Young*, 392 B.R. at 22. Additionally, the fact that Congress did not use the same kind of limiting language in § 707(b)(2)

that appears in the IRS guidelines indicates that Congress did not intend for the Local Standards to function in the same manner under § 707 that they do under IRS guidelines. *Id.* That is, under § 707(b)(2), the Local Standards do not serve merely as a cap on debtors' actual expenses (as they do for IRS purposes), but instead Congress made the Local Standards the actual deduction, or "fixed allowances," under § 707(b)(2). *In re Mati*, 390 B.R. at 23; *In re Haley*, 354 B.R. at 343; *see also In re Fowler*, 349 B.R. at 418 (quoting Hon. Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 255–57 (Spring 2005)).

*also In re Phillips*, 382 B.R. 153, 172 (Bankr.D.Mass.2008) (reaching, after a thorough analysis, the same conclusion with regards to claiming the standard housing deduction for which the debtor qualified based on the area where she lived and the size of her household).

While the congressional wisdom of fixing the vehicle ownership expense deductions without regard to loan or lease is certainly subject to debate, there are sound reasons for that choice. Ownership expenses encompass costs associated with owning a vehicle beyond loan or lease payments; thus, even if the debtor does not need to replace the vehicle, owning a vehicle "always involves an expense." *In re Kimbro*, 389 B.R. at 531; *see also In re Burbank*, 401 B.R. at 72 (explaining that car ownership expenses necessarily and typically include depreciation, licensing, taxes, and insurance); *but see In re Young*, 392 B.R. at 22 (clarifying that only operating vehicles incur some costs). Allowing debtors who do not have a car payment to take the vehicle ownership deduction " 'avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before filing.' " Wedoff, *supra*, at 257; *see also In re Burbank*, 401 B.R. at 72; *In re Fowler*, 349 B.R. at 418. Allowing debtors to take the vehicle ownership deduc-

tion where they have no lease or loan payments rewards "honest but unfortunate" debtors who "[hung] on to old cars to economize and get on a better financial footing." *See* Braucher, *supra*, at 386 n. 204. On the other hand, disallowing the vehicle ownership expense where the debtor has no lease or loan payment would penalize these debtors, and indeed would create "a perverse incentive to splurge on a vehicle" prior to filing a bankruptcy petition. *In re Baughman*, No. 07–63208, 2008 WL 4487879, *4 (Bankr.N.D.Ohio Sept.30, 2008); *see also In re Lanning*, 130 S.Ct. at 2476–78 (rejecting appellant's suggestion that debtors could engage in certain "maneuvers" to avoid problems of mechanical approach); Braucher, *supra*, at 386 n. 204. Rewarding debtors who "enter bankruptcy owning expensive, shiny new cars with huge monthly payments, which can be taken in full under means testing," *see* Braucher, *supra*, at 386 n. 204, would thus frustrate the Bankruptcy Code's most basic principle: equity. *See In re Marrama*, 549 U.S. at 367, 127 S.Ct. 1105.

## CONCLUSION

Although *Lanning* can be read as an endorsement of judicial discretion, *see, e.g., In re Collier*, No. 09–33187, 2010 WL 2643542 (Bankr.M.D.Ala. June 29, 2010); [17] 8 Bankruptcy Service Current Awareness

---

17. In *Collier*, the United States Bankruptcy Court for the Middle District of Alabama reasoned that, under *Lanning*, "the means test is the starting point, but [the] test may be varied under the circumstances of a particular case. It follows that a *per se* rule in which all payments to secured creditors are reasonable [sic] necessary deductions under Section 707(b) is not in keeping with the holding in *Lanning*." *In re Collier*, 2010 WL 2643542, at *3. The court further reasoned that "variances from the means test result are available on showing unique circumstances of a particular case." *Id.* Later in the decision, the court opined that even though § 1325(b)(3)

incorporates § 707 (which allows courts to consider "special circumstances") only with respect to calculating expenses, Congress did not intend to eliminate "discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes." *Id.* at *9. The bankruptcy court concluded that the "reasonably necessary" test of § 1325(b) applied to the deduction of a secured debt payment under § 707(b)(2)(iii). *Id.* at *3. Although the secured debt was for a recreational vehicle, the issue did not pertain to the "vehicle ownership" deduction.

Alert 4, Hon. Nancy C. Dreher (Aug. 2010),[18] we cannot conclude that the Supreme Court intended to endorse an unfettered grant of discretion which would permit bankruptcy courts to apply BAPCPA in a manner directly at odds with its express terms. The Debtor owns and operates a vehicle and, therefore, incurs expenses related to it. The fact that those expenses may be less than the amount Congress fixed for inclusion in the means test analysis does not mean that courts have the discretion to disallow the expense in that analysis.

For the reasons discussed above, we **REVERSE** the Order and **REMAND** for proceedings consistent with this opinion.

18. Although the Court emphasized that its decision was based on the text of § 1325, Judge Nancy Dreher has opined that the "real issue" in *Lanning* was not plain meaning, but rather the scope of judicial discretion under the Bankruptcy Code. *See Dreher,* supra. Judge Dreher noted that lower courts tend to "adher[e] religiously to a *Ron Pair* analysis" by narrowing judicial discretion in the face of ambiguous statutory language, while the circuit courts and the Supreme Court are sometimes "more generous in reading the statute to make sense rather than as totally strangling the bankruptcy court's discretion." *Id.*